[No. B061388. Second Dist., Div. Four. Apr. 23, 1993.]

LEE D. PRENTISS et al., Plaintiffs and Respondents, v.
CITY OF SOUTH PASADENA et al., Defendants and Appellants.

COUNSEL

Antonio Rossmann and Roger B. Moore for Defendants and Appellants.

Andrews & Kurth, James B. Hicks, Kathy A. Jorrie and Valerie D. Langs as Amici Curiae on behalf of Defendants and Appellants.

Hahn & Hahn, Charles J. Greaves and Philip F. Lanzafame for Plaintiffs and Respondents.

OPINION

VOGEL (C. S.), J.—Respondents Lee and Shirley Prentiss sought a building permit for construction of an addition to their single family home, from appellants the City of South Pasadena, its building and planning division, and its building and planning director. Respondents' application for the building permit became embroiled in controversy after appellants asserted that respondents' home was a "qualified historic structure" within the meaning of the State Historical Building Code. (Health & Saf. Code, §§ 18950-18961.) Contending that the State Historical Building Code gave appellants discretion to require that alterations to respondents' home be done in a manner best preserving the historical character of the architecture, appellants insisted that an evaluation of the impact of the project on the "historical environment" be conducted pursuant to the procedures of the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000 et seq.) Appellants thereafter offered to issue a "mitigated negative declaration"

under CEQA and to grant the building permit, on condition that respondents agree to recommendations of a consulting historical architect for changes in the building plans to preserve historical architectural compatibility.

At that point respondents filed in superior court the present action for a writ of mandate (Code Civ. Proc., § 1085 or in the alternative § 1094.5) to compel issuance of the building permit without conditions. The trial court granted the writ on several alternative theories, including (1) CEQA does not apply, because issuance of a building permit free of the historical architectural conditions was a ministerial act, (2) even under CEQA, the project was categorically exempted based on the square footage involved, (3) even under CEQA, there is no substantial evidence of the likelihood of a significant adverse effect on the environment, and (4) appellants did not timely deny respondents' right to the permit.

We affirm on the first ground and do not reach the others. Because respondents' application for a building permit required no variance or conditional use permit and fully complied with the Uniform Building Code, issuance of the requested building permit was a ministerial act to which CEQA does not apply. Appellants fail to show that any statute or ordinance gave appellants discretion to deny the permit on historical architectural grounds. In this respect appellants misinterpreted their authority under the State Historical Building Code, failing to distinguish between laws designed to *encourage voluntary* historical preservation by private property owners and zoning laws designed to *require* historical preservation.

FACTUAL AND PROCEDURAL BACKGROUND

Respondents' home at 304 Oaklawn Avenue, along with several other residences on the same street, is considered part of the "Oaklawn District." This was a suburb developed shortly after the turn of the century. Many of the residences were designed by George Lawrence Stimson in the "Craftsman Style." In fact, respondents' residence, constructed in 1907, was Stimson's own residence while he was developing most of the tract.

The Oaklawn District is "eligible" for listing in the National Register of Historic Places. (16 U.S.C. § 470a.) Based on its eligibility for listing in the National Register, the Oaklawn District, including respondents' residence, was included in the State Historic Resources Inventory. (Pub. Resources Code, § 5024.)[1]

Neither respondents' property nor the Oaklawn District was listed, however, in the city's own local inventory of cultural heritage landmarks, nor

[1]At trial respondents objected to the admissibility of appellants' evidence of the state listing, but we treat the inclusion on the state inventory as true, based on the declaration of the

had the city by ordinance zoned the district as an historic district. (Pub. Resources Code, § 5031, subd. (c); Gov. Code, §§ 37361, 50280.)

The existing residence is two stories. Respondents' proposed addition would make the height three stories.

Respondents' application for a building permit required no variance or conditional use permit, respondents' building plans complied fully with the Uniform Building Code, and respondents met all requirements for issuance of a building permit, under section 303 of the Uniform Building Code.

Appellants in fact *granted* the requested permit on August 27, 1990, but then issued a stop order on September 27, 1990, contending that by virtue of the applicability of the State Historical Building Code, environmental review under CEQA was required.

In accordance with CEQA procedures (see Pub. Resources Code, § 21080, subd. (c)), the director of building and planning issued for public comment a proposed negative declaration that the project would have no significant adverse effect on the environment. Public opposition developed, however, and on December 5 and 19, 1990, the city council held public hearings. At the conclusion of the December 19 public hearing, the city council adopted a plan that a mitigated negative declaration would be issued, provided that respondents at their own expense consult an historical architect, that the consultant render an opinion as to the historic compatibility of the architecture and make recommendations for modification of the plans, and that respondents be issued the building permit upon agreement to the architect's recommendations.

In January 1991, the consulting architect reported his opinion and recommendations for changes in the plans. The consultant noted that respondents' proposed plans were unquestionably "in the Craftsman Style," that their design was not out of character with the neighborhood, that a three-story height was not itself objectionable, and that the location of the addition on the site was appropriate.

The consultant suggested, however, that the height of the addition overpowered the original house, and certain vertical features and embellished ornamentation were inconsistent with the traditional horizontal emphasis and natural ornamentation of the Craftsman style. He recommended: (1) limiting to the first floor the new construction of an entry hall and covered porch, (2)

deputy state historic preservation officer submitted in support of appellants' motion for new trial.

scaling back the massive appearance by eliminating a third floor artist's studio and depressing the ground floor game room, (3) changing the slope of the roof, and (4) deemphasizing vertical elements and overembellishments.

On March 6, 1991, the city council gave respondents 90 days to comply with the consultant's recommendations. According to respondents' petition, the additional cost of complying with the consultant's recommendations is $40,000.

On April 2, 1991, respondents filed the instant action. After a trial of less than one day on May 24, 1991, the trial court granted the writ of mandate, effectively upon all possible grounds. The court subsequently denied appellants' motion for new trial. The court entered a peremptory writ of mandate compelling appellants to reissue the building permit originally issued August 27, 1990.

## DISCUSSION

■ Ordinarily issuance of a building permit for a project meeting the criteria of the applicable zoning ordinance and Uniform Building Code is a ministerial project to which CEQA does not apply. By asserting that the applicability of the State Historical Building Code made respondents' project a discretionary one which brought CEQA into play, appellants used CEQA to impose historical architecture conditions on the permit.

The dispositive issue involves statutory interpretation as applied to essentially undisputed facts, and thus presents a question of law which we review independently of the trial court. (*Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1228 [256 Cal.Rptr. 671].) We hold appellants' argument is based on an erroneous interpretation of the purpose of the State Historical Building Code, and that CEQA does not apply to respondents' project. We affirm the trial court's judgment granting a writ of ordinary mandamus to enforce a ministerial duty to issue a building permit. (Code Civ. Proc., § 1085; see *Court House Plaza Co.* v. *City of Palo Alto* (1981) 117 Cal.App.3d 871, 880, 883 [173 Cal.Rptr. 161].)

## CEQA APPLIES ONLY TO DISCRETIONARY PROJECTS

The purpose of CEQA procedures is to assist public agencies in evaluating whether projects which they have discretion to approve or disapprove will have a significant adverse effect upon the environment. (Pub. Resources

Code, § 21002.)[2] By its own statutory definition, CEQA applies only to "discretionary projects" and does not apply to "ministerial projects." (Pub. Resources Code, § 21080, subds. (a), (b)(1).)[3] If, under the applicable substantive law, an agency's approval is ministerial rather than discretionary, evaluation of environmental impact is unnecessary and CEQA does not apply. (*Friends of Westwood, Inc.* v. *City of Los Angeles* (1987) 191 Cal.App.3d 259, 272 [235 Cal.Rptr. 788].)

The CEQA "Guidelines" (regulations issued by the Secretary for Resources) define discretionary and ministerial. " 'Discretionary project' means a project which requires the exercise of judgment or deliberation when the public agency or body decides to approve or disapprove a particular activity, as distinguished from situations where the public agency or body merely has to determine whether there has been conformity with applicable statutes, ordinances or regulations." (Cal. Code Regs., tit. 14, § 15357.)

" 'Ministerial' describes a governmental decision involving little or no personal judgment by the public official as to the wisdom or manner of carrying out the project. The public official merely applies the law to the facts as presented but uses no special discretion or judgment in reaching a decision. A ministerial decision involves only the use of fixed standards or objective measurements, and the public official cannot use personal, subjective judgment in deciding whether or how the project should be carried out. . . . A building permit is ministerial if the ordinance requiring the permit limits the public official to determining whether the zoning allows the structure to be built in the requested location, the structure would meet the

---

[2]Public Resources Code section 21002 provides: "The Legislature finds and declares that it is the policy of the state that public agencies should not approve projects as proposed if there are feasible alternatives or feasible mitigation measures available which would substantially lessen the significant environmental effects of such projects, and that the procedures required by this division are intended to assist public agencies in systematically identifying both the significant effects of proposed projects and the feasible alternatives or feasible mitigation measures which will avoid or substantially lessen such significant effects. The Legislature further finds and declares that in the event specific economic, social, or other conditions make infeasible such project alternatives or such mitigation measures, individual projects may be approved in spite of one or more significant effects thereof."

"Projects" include private projects which require discretionary issuance of a permit by public agencies. (Pub. Resources Code, § 21065, subd. (c).)

[3]Public Resources Code section 21080 provides in relevant part: "(a) Except as otherwise provided in this division, this division shall apply to discretionary projects proposed to be carried out or approved by public agencies, including, but not limited to, the enactment and amendment of zoning ordinances, the issuance of zoning variances, the issuance of conditional use permits and the approval of tentative subdivision maps (except where the project is exempt from the preparation of an environmental impact report pursuant to Section 21166). [¶] (b) This division shall not apply to the following: [¶] (1) Ministerial projects proposed to be carried out or approved by public agencies."

strength requirements of the Uniform Building Code, and the applicant has paid his fee." (Cal. Code Regs., tit. 14, § 15369.)

"In the absence of any discretionary provision contained in the local ordinance or other law establishing the requirements for a permit, . . . the following actions shall be presumed ministerial: [¶] (1) Issuance of building permits." (Cal. Code Regs., tit. 14, § 15268, subd. (b)(1).) Appellants' own local ordinance implementing CEQA identifies building permits as ministerial projects not requiring CEQA compliance. (Cal. Code Regs., tit. 14, § 15268, subd. (c).)

Building permits may sometimes be involved, however, in discretionary projects subject to CEQA. This includes when substantial discretion exists in the local ordinance (*Friends of Westwood, Inc.* v. *City of Los Angeles, supra,* 191 Cal.App.3d 259, 273-281 ["major project" permit involving 26-story building required substantial exercises of discretion]), when the permit is integral to a larger project subject to CEQA (*Orinda Assn.* v. *Board of Supervisors* (1986) 182 Cal.App.3d 1145, 1171-1172 [227 Cal.Rptr. 688]) or when other law vests discretion in connection with the permit (*People* v. *Department of Housing & Community Dev.* (1975) 45 Cal.App.3d 185, 190, 191-192, 194 [119 Cal.Rptr. 266] [construction permit ministerial under local law but subject to discretion of state agency under State Mobilehome Parks Act].)

## CEQA AND HISTORICAL BUILDINGS

The distinction between ministerial and discretionary projects applies as well when an historic building is involved. Whether CEQA applies in the first place depends not on the historic character itself but on whether the *project* is ministerial or discretionary. (Pub. Resources Code, § 21080, subds. (a), (b)(1).)

For example, in *Adams Point Preservation Society* v. *City of Oakland* (1987) 192 Cal.App.3d 203 [237 Cal.Rptr. 273], preservationists sought to require compliance with CEQA before issuance of a permit to demolish an historic dwelling. The court held CEQA did not apply, because the issuance of the demolition permit was a ministerial, not discretionary, act. (*Id.* at pp. 206-208.) Similarly, in *Environmental Law Fund, Inc.* v. *City of Watsonville* (1981) 124 Cal.App.3d 711 [177 Cal.Rptr. 542], opponents of demolition of an historic building sought to require CEQA compliance before issuance of a demolition permit. The court held issuance of the demolition permit was ministerial, therefore CEQA did not apply. (*Id.* at pp. 715-717.)

The mere listing of a building on an official inventory of historic resources does not necessarily show that public officials exercise discretion

over the private owner's projects involving that building. (*Foundation for San Francisco's Architectural Heritage* v. *City and County of San Francisco* (1980) 106 Cal.App.3d 893, 914 [165 Cal.Rptr. 401].) In *Orinda Assn.* v. *Board of Supervisors, supra,* 182 Cal.App.3d 1145, a theater building proposed to be demolished was eligible for inclusion on the National Register of Historic Places. (*Id.* at p. 1153 and fn. 3.) The court held the demolition involved a discretionary project, not because of the historic status but because it was part of a larger project which did involve official discretion. (*Id.* at pp. 1171-1172.) In *San Diego Trust & Savings Bank* v. *Friends of Gill* (1981) 121 Cal.App.3d 203 [174 Cal.Rptr. 784], owners of a dwelling which was listed on both the local and national registers of historic sites sought a demolition permit. The reason CEQA was held to apply was not the historic status by itself. Rather, the city had a specific ordinance which required that no permit for demolition of a building listed in the city's register of historic sites could be issued without first being reviewed by an historical site board. (*Id.* at pp. 206-207 and fn. 2.) It was because the court construed that ordinance to mean the board had discretion to delay the project pending a search for alternatives, that the project was held a discretionary one to which CEQA applied. (*Id.* at pp. 209-214.)

Here, although it appears the City of South Pasadena's cultural heritage ordinance (Ord. No. 1591) contains a similar provision to delay the demolition or substantial alteration of its designated cultural landmarks, that ordinance does not apply to respondents' property or the Oaklawn District, which have not been so designated.

We note that *if* a project involving an historic building is discretionary, so as to bring CEQA into play, the effect on the historical environment must be considered. (Pub. Resources Code, §§ 21001, subd. (b), 21084, subd. (e), 21084.1.) This would not necessarily mean the building must be preserved, because the public agency might find that other considerations outweigh the adverse effect on the historical environment. (Pub. Resources Code, §§ 21002, 21002.1, subd. (c); *Dusek* v. *Redevelopment Agency* (1985) 173 Cal.App.3d 1029, 1039 [219 Cal.Rptr. 346]; *Foundation for San Francisco's Architectural Heritage* v. *City and County of San Francisco, supra,* 106 Cal.App.3d at p. 917.) Neither evaluation of the historical effects nor their balancing against other considerations is reached, however, if the project is ministerial so that CEQA is not invoked in the first place. (Pub. Resources Code, §§ 21080, subds. (a), (b)(1); Cal. Code Regs., tit. 14, § 15300.1; *Association for Protection etc. Values* v. *City of Ukiah* (1991) 2 Cal.App.4th 720, 733 [3 Cal.Rptr.2d 488].)

## APPLICATION OF THE STATE HISTORICAL BUILDING CODE

The core question in this case is whether the applicability of the State Historical Building Code to respondents' residence changes respondents'

project from a ministerial to a discretionary one, so as to invoke CEQA and require environmental review or authorize environmental mitigation conditions.

In order to place the State Historical Building Code into context, we first provide a brief overview of governmental historical preservation measures.

Although the government may acquire privately owned historic property by eminent domain (Gov. Code, §§ 37361, 25373), this is an economically impractical method of historical preservation. Many governmental programs seek by various incentives to encourage the private owner voluntarily to preserve the historical character of the property. (See 3 Manaster & Selmi, Cal. Environmental Law and Land Use Practice (1992) §§ 60.132-60.134; Gray, *A Guide to Historic Preservation for the California Practitioner* (1981) 21 Santa Clara L.Rev. 613, 645.) These include low-interest rehabilitation loans (Health & Saf. Code, § 37600 et seq.) and favorable tax treatment (Rev. & Tax. Code, §§ 439-439.4.)

In recognition of the property rights of owners, Government Code section 50280 et seq., enacted in 1972, authorized a city, county, or city and county to create historic zones for the purpose of entering into *contracts* with owners to restrict the use of qualified historical property in order to preserve or restore it.[4]

---

[4]As enacted in 1972, Government Code sections 50280 and 50281 required creation by ordinance of an "historic zone" for the purpose of entering contracts with owners to preserve qualified historical property. The reference to creating an historic zone was deleted by amendments in 1985. (Stats. 1972, ch. 1442, § 1, p. 3159; Stats. 1985, ch. 965, §§ 1.7, 2, 3, pp. 3059-3060.)

Government Code section 50280 now provides: "Upon the application of an owner or the agent of an owner of any qualified historical property, as defined in Section 50280.1, the legislative body of a city, county, or city and county *may contract with the owner or agent to restrict the use of the property* in a manner which the legislative body deems reasonable to carry out the purposes of this article and of Article 1.9 (commencing with Section 439) of Chapter 3 of Part 2 of Division 1 of the Revenue and Taxation Code. The contract shall meet the requirements of Sections 50281 and 50282." (Italics added.)

Section 50280.1 provides: " 'Qualified historical property' for purposes of this article, means privately owned property which is not exempt from property taxation and which meets either of the following: [¶] (a) Listed in the National Register of Historic Places or located in a registered historic district, as defined in Section 1.191-2(b) of Title 26 of the Code of Federal Regulations. [¶] (b) Listed in any state, city, county, or city and county official register of historical or architecturally significant sites, places, or landmarks."

Section 50281 provides: "Any contract entered into under this article shall contain the following provisions: [¶] (a) The term of the contract shall be for a minimum period of 10 years. [¶] (b) Where applicable, the contract shall provide the following: [¶] (1) For the preservation of the qualified historical property and, when necessary, to restore and rehabilitate the property to conform to the rules and regulations of the Office of Historic Preservation

In contrast to these techniques of encouraging voluntary preservation of historic private property, mandatory zoning and land use restrictions raise issues of governmental taking of property. In *San Diego Trust & Savings Bank* v. *Friends of Gill, supra,* 121 Cal.App.3d 203, the court construed an ordinance as giving the local historical site board discretion to *delay,* for a limited period, a permit for demolition of an historical dwelling, during which alternatives for preservation of the building could be explored. The court cautioned, however, that outright denial of the demolition permit might constitute inverse condemnation. (*Id.* at p. 214.) In *Penn Central Transp. Co.* v. *New York City* (1978) 438 U.S. 104 [57 L.Ed.2d 631, 98 S.Ct. 2646], the Supreme Court upheld a municipal landmark law under which the owner of Grand Central Terminal was not allowed to alter the historic features of the structure, at least where the landmark law gave the owner compensating advantages. (See Annot. (1982) Validity and Construction of Statute or Ordinance Protecting Historical Landmark, 18 A.L.R.4th 990.) In California, cities and counties are authorized by Government Code sections 37361 and 25373 to enact ordinances and regulations for the protection of historic places or districts.[5] In *Bohannan* v. *City of San Diego* (1973) 30 Cal.App.3d 416, 420 [106 Cal.Rptr. 333], the court upheld a San Diego architectural control ordinance (apparently based on Gov. Code, § 37361) which regulated buildings in the historic area known as "Old Town."

The mere listing of a private property on the State Historical Resources Inventory, based on its being "eligible" for listing on the National Register of Historic Places (National Register), is not by itself a substantive restriction on the owner's use of the property. (*Foundation for San Francisco's Architectural Heritage* v. *City and County of San Francisco, supra,* 106 Cal.App.3d 893, 914; Pub. Resources Code, §§ 5024, 5020.1, 5024.1; see Rose, *Preservation and Community: New Directions in the Law of Historic*

---

of the Department of Parks and Recreation. [¶] (2) For the periodic examinations of the interior and exterior of the premises by the assessor, the Department of Parks and Recreation, and the State Board of Equalization as may be necessary to determine the owner's compliance with the contract. [¶] (3) For it to be binding upon, and inure to the benefit of, all successors in interest of the owner. A successor in interest shall have the same rights and obligations under the contract as the original owner who entered into the contract."

[5]Government Code section 37361 provides: "The legislative body may acquire property for the preservation or development of a historical landmark. It may also acquire property for the development of recreational purposes and facilities in connection therewith. [¶] The legislative body may provide for places, buildings, structures, works of art and other objects, having a special character or special historical or aesthetic interest or value, special conditions or regulations for their protection, enhancement, perpetuation or use, which may include appropriate and reasonable control of the use or appearance of neighboring private property within public view, or both."

*Preservation* (1981) 33 Stan.L.Rev. 473, 497-502.)[6] With respect to privately owned historical property, these statutes "provide only for the registration of state historical sites[,] impose no restraints on use of those sites and do not require preservation in any particular form. The only purpose of the state program is to list and mark significant sites." (*Foundation for San Francisco's Architectural Heritage* v. *City and County of San Francisco, supra,* 106 Cal.App.3d at p. 914.) In its 1992 revamping of the statutes relating to compilation of lists identifying the state's historic resources, the Legislature expressly recognized "that the long-term preservation and enhancement of historical resources is dependent, to a large extent, on the good will and cooperation of the general public and of public and private owners of those resources. [¶] Therefore, it is the intent of the Legislature that public agencies, including the [State Historical Resources Commission and the State Office of Historic Preservation], shall endeavor to carry out their responsibilities under this article in a manner designed to elicit the cooperation of the owners of both identified and unidentified resources, to encourage the owners to perceive these resources as assets rather than liabilities, and to encourage the support of the general public for the preservation and enhancement of historical resources." (Pub. Resources Code, § 5020.7.)

In the instant case, the City of South Pasadena has not, under either Government Code section 37361 or former section 50280, enacted any ordinance which regulates the properties in respondents' neighborhood or creates an historic zone. The record suggests that the city once considered, but rejected, the creation of an historic district zone for this neighborhood.

The sole authority on which appellants rely for their discretion to control the architecture of respondents' property to achieve historical preservation is the State Historical Building Code and CEQA. In other words, appellants contend that even though the city has no local ordinance giving appellants discretion as to historical architectural control, the State Historical Building Code is an "other law" which makes respondents' project discretionary. (Cal. Code Regs., tit. 14, § 15268, subd. (b)(1), quoted, *ante,* p. 91.) This argument misinterprets the purpose and function of the State Historical Building Code.

The purpose of the State Historical Building Code, enacted in 1975, was explained in the enabling legislation and the code regulations. (Health & Saf. Code, §§ 18950-18961; Cal. Code Regs., tit. 24, pt. 8.) "It is the purpose of this part to provide alternative building regulations and building standards

---

[6]Actual listing on the National Register requires the owner's consent. (16 U.S.C. § 470a(a)(6); *Orinda Assn.* v. *Board of Supervisors, supra,* 182 Cal.App.3d at p. 1153 and fn. 3.) The same is true under the newly enacted statutory scheme for a California Register of Historical Resources. (Pub. Resources Code, §§ 5020.1, subd. (a), 5024.1, subd. (f)(4), (5).)

for the rehabilitation, preservation, restoration (including related reconstruction), or relocation of buildings or structures designated as historic buildings. Such alternative building standards and building regulations are intended to facilitate the restoration or change of occupancy so as to preserve their original or restored architectural elements and features, to encourage energy conservation and a cost-effective approach to preservation, and to provide for the safety of the building occupants." (Health & Saf. Code, § 18951.) "It is the intent of this part to provide means for the preservation of the historical value of designated buildings and, concurrently, to provide reasonable safety from fire, seismic forces or other hazards for occupants of such buildings, and to provide reasonable availability to and usability by, the physically handicapped." (Health & Saf. Code, § 18953.)

As explained in the introduction and historical preface preceding California Code of Regulations, title 24, part 8, section 8-100, "[t]his new code will give enforcing authorities a tool previously not available in dealing with historical structures. . . . The intent of the SHBC is to save California's architectural heritage by recognizing the unique construction problems inherent in historical buildings and by providing a code to deal with these problems. . . . [The advisory committee found that] '. . . restoration . . . is frequently made difficult by unnecessarily rigid interpretation of building . . . codes.' "

Health and Safety Code section 18954 provides "[r]epairs, alterations and additions necessary for the preservation, restoration, rehabilitation, moving, or continued use of a historical building or structure *may be made if they conform to this part.*" (Italics added.) *"These regulations control and allow alternatives to any and all prevailing codes when dealing with qualified historical buildings or sites."* (Cal. Code Regs., tit. 24, pt. 8, § 8-102, italics added.)

The purpose of the State Historical Building Code is therefore clear, to *allow,* in the case of qualified historical buildings, alterations which otherwise would not meet the standards of the regular prevailing building code, such as the Uniform Building Code. The State Historical Building Code fits the pattern of laws designed to *encourage* private owners to preserve historically significant properties. The State Historical Building Code is not, however, a device by which a city or county may compel an owner to preserve the historical character of the property. Appellants erroneously interpreted the State Historical Building Code to give appellants discretion to *disallow* any alteration to an historical building even where, as in this case, the owner's proposed alteration *meets* all the requirements of the Uniform Building Code and the owner is not requesting any special treatment under the State Historical Building Code. Appellants' interpretation is

inconsistent with the purpose of the State Historical Building Code and with section 8-104 of the regulations, which provides, "It is not the intent of these regulations to allow non-historical expansion or addition to a historical building *unless such expansion or addition conforms to all prevailing codes and regulations.*" (Cal. Code Regs., tit. 24, pt. 8, § 8-104, italics added.)

Appellants' argument correctly states several premises, but draws an erroneous conclusion as to respondents' project. Appellants contend: (1) by being on the State Historic Resources Inventory, respondents' property is a "qualified historical building" (Health & Saf. Code, § 18955); (2) the State Historical Building Code "shall apply" to all qualified historical structures (Health & Saf. Code, § 18952); (3) the "building department of every city or county shall apply the provisions of alternative standards and building regulations" adopted by the State Historical Building Safety Board (Health & Saf. Code, § 18954); and (4) under the regulations in the code, discretion exists as to which of several alternative methods of construction may be allowed. (Cal. Code Regs., tit. 24, pt. 8, § 8-108.)[7]

From these premises appellants erroneously conclude that therefore respondents' project is discretionary. Respondents' project meets all the requirements of the Uniform Building Code and does not require the exercise of any discretion involving alternative methods of construction. The fact that discretion could conceivably be exercised in projects arising under the State Historical Building Code does not mean that *respondents'* project was discretionary.

The State Historical Building Code *allows* alterations to historical structures by alternative methods which would not meet the requirements of the otherwise prevailing code. The inclusion of respondents' property on the state inventory made the property eligible for the benefits of the State Historical Building Code. The requirement that every city and county building department "shall apply" the State Historical Building Code means that they *must* allow the owner to use the approved alternative methods. Appellants, however, would interpret the State Historical Building Code to

---

[7]Section 8-108 provides: "The provisions of the State Historical Building Code are not intended to prevent the use of any proposed alternative design, material or method of construction not specifically prescribed or allowed by SHBC, provided any such alternative will facilitate the preservation of historical buildings or structures and has been approved. The enforcing agency may approve any such alternative provided the proposed design, material or method of construction is satisfactory and that the proposed design, material or method of construction or work offered is, for the purpose intended, reasonably equivalent to that prescribed or allowed in this code in quality, strength, effectiveness, fire resistance, durability, and safety. [¶] The enforcing agency may request that sufficient evidence or proof be submitted to substantiate any claims that may be made regarding such alternatives."

authorize a building and planning department to *prevent* any alteration to an historical structure, if the alteration is not deemed "historically correct."

We find no basis in law for appellants' interpretation. The city did not create an historic zone under former Government Code sections 50280 and 50281 to contract with owners for preservation. The city did not enact a regulatory historic district architectural control ordinance for this neighborhood. (Gov. Code, § 37361; *Bohannan* v. *City of San Diego, supra*, 30 Cal.App.3d 416, 420-421.) The city did not even include this property within its inventory of cultural heritage landmarks so as to bring it within the permit requirements of the city's cultural heritage ordinance. (*San Diego Trust & Savings Bank* v. *Friends of Gill, supra*, 121 Cal.App.3d 203, 206-207, fn. 2.)

If appellants' argument were correct, then merely because an owner's home was eligible for listing in the National Register, the local building and planning department could prohibit any alterations to the building. To adopt appellants' interpretation would mean that through the State Historical Building Code and CEQA, local building and planning authorities hold far more strict and pervasive power over private owners of historical property than would exist even under a properly drafted historical preservation ordinance, which must carefully draw the line between "regulation" and "taking." (*Penn Central Transp. Co.* v. *New York City, supra*, 438 U.S. 104.) Appellants cannot use the guise of CEQA evaluation as a substitute for a proper zoning ordinance. (See *Gabric* v. *City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 183, 189 [140 Cal.Rptr. 619].)

DISPOSITION

The judgment is affirmed.

Woods (A. M.), P. J., and Hoffman, J.,* concurred.

A petition for a rehearing was denied May 20, 1993, and appellants' petition for review by the Supreme Court was denied July 15, 1993.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.