Filed 7/22/25  Twins Luck Properties v. City of San Diego CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| TWINS LUCK PROPERTIES, LLC, | D084752 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2023-00054163-CU-WM-CTL) |
| THE CITY OF SAN DIEGO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.  Respondent's request for judicial notice is granted.  Appellant's request for judicial notice is denied.

Law Offices of Andrea Contreras and Andrea Contreras for Plaintiff and Appellant.

Heather Ferbert, City Attorney, M. Travis Phelps, Assistant City Attorney, and Jana Mickova Will, Deputy City Attorney, for Defendant and Respondent.

Twins Luck Properties, LLC appeals the denial of its petition for a writ of mandate based on the City of San Diego's denial of its Encroachment Maintenance and Removal Agreement (Permit) application to construct a

gate that would restrict access to the only part of the street wide enough for trucks and larger vehicles to easily—and safely—turn around. The City Engineer denied the Permit after finding the proposed gate would "create a dangerous and unsafe condition" for vehicular and pedestrian traffic, making it "detrimental" to public safety. Twins Luck raises various grounds for relief on appeal.

Two grounds, whether the Permit denial relied on an unconstitutional condition and whether the City Attorney's Office served a dual role that violated Twins Luck's due process rights, are forfeited as untimely raised or not adequately preserved.

On the preserved claims, we conclude the City did not abuse its discretion in denying the Permit. The denial turned on the City Engineer's determination the gate would adversely affect public safety, which requires exercising judgment and thus is discretionary rather than ministerial.

Next, the City Engineer did not violate City procedures by considering evidence obtained after the application was deemed complete. Though the San Diego Municipal Code precludes the City Engineer from *requesting* additional materials from a Permit applicant after a point, Twins Luck identifies no authority prohibiting him from *receiving* or *considering* other materials.

Finally, the record contains evidence supporting the City Engineer's finding the gate would be detrimental to public safety. Twins Luck cites no authority excluding members of a gated community or their guests from the general public. And evidence of large vehicles reversing down the full length of the street when the spot for the proposed gate was blocked, even without evidence of injury or damage, supports the City Engineer's finding.

Accordingly, we affirm the denial of the petition.

Twins Luck owns Lot 18 in a gated community.  The street leading up to Lot 18 widens at and extends into the property as shown in the image below.





That widened portion of the street on Lot 18 is subject to a City-owned general utility and access easement. The easement grants "the right of ingress and egress" (1) to repair, maintain, or alter any utility equipment and (2) by "emergency vehicles for access" to nearby homes and lands "for emergency purposes." Twins Luck retains "continued use of the surface" of the property subject to certain conditions.

B.

Twins Luck wanted to build a gate across the narrower side of the street on Lot 18, around where the end of the words "access," "hereon" and "14" are located in the above image. It is undisputed that, due to the easement, Twins Luck had to obtain a Permit to do so.

Twins Luck submitted a Permit application for the gate to the City Engineer. In it, Twins Luck proposed a keypad that would allow the

4

residents of Lot 18, "their guests, emergency vehicles, and utility vehicles" to gain access to the wider portion of the street on the property. The Permit application was deemed complete in early May 2023.

In the meantime, Twins Luck blocked off the widened portion of the street on Lot 18 with cones roughly where it wanted to build the gate. In response, its next-door neighbor sued. The City was eventually named as a party in the neighbor litigation.

After the Permit application was deemed complete, representatives for both Twins Luck and its neighbor sent the City Attorney materials from their litigation they felt were relevant to the Permit application, including videos. The City Attorney forwarded the materials to the City Engineer. In an email to Twins Luck's counsel copying the neighbor's counsel, the City Attorney said to "please send everything to [the City Engineer] with a copy to me."

C.

The City Engineer denied Twins Luck's Permit application.

In his denial letter, the City Engineer identified various parts of the San Diego Municipal Code, Street Design Manual, California Fire Code, and other conditions. Relevant here, the San Diego Municipal Code provides the requested construction "shall not adversely affect the public's health, safety, or general welfare." (San Diego Mun. Code, § 129.0715(a)(1).)

A basis for the City Engineer's denial was his finding the proposed gate "will create a dangerous and unsafe condition to vehicular traffic, pedestrian traffic and will be detrimental to the health, safety, and welfare of the public." He explained the proposed gate would "prevent the required turnaround radius at the cul-de-sac for vehicles to safely navigate the road."

D.

Twins Luck sought to overturn the Permit denial by petitioning the court for a writ of mandate and declaratory relief. The court denied the petition after determining Twins Luck had "not met its burden."

II.

We address the parties' requests for judicial notice and some matters of forfeiture before turning to the merits of Twins Luck's remaining arguments.

A.

Both parties submitted requests for judicial notice.

The City's unopposed request for judicial notice provides sections of the San Diego Municipal Code, Land Development Manual, and a City information bulletin about construction changes to approved plans. Upon request, a court shall take judicial notice of such documents. (Evid. Code, §§ 452-453.) The trial court judicially noticed them. A reviewing court shall take judicial notice of matters properly noticed by the trial court. (§ 459(a).) We therefore grant the City's request for judicial notice.

Twins Luck asks us to judicially notice (1) photographs submitted in the neighbor litigation, but not the trial court in this matter, showing damage to Twins Luck's home after a break-in as justification for the proposed gate; (2) the City's non-opposition to its dismissal without prejudice from the neighbor litigation, which was filed after the trial court denied Twins Luck's writ petition; and (3) a declaration from Twins Luck's consultant attesting to what the City Engineer told him after denying the Permit, which was not submitted to the trial court. The City opposes and, in response to the third item, attaches an excerpt from the City Engineer's deposition to its responding brief. A reviewing court generally "look[s] only to the record made in the trial court" and may decline to judicially notice "a matter which

6

should have been presented to the trial court for its consideration in the first instance." (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325-326.) For this reason and because the materials are irrelevant to our disposition, we (1) deny Twins Luck's request and (2) do not consider the deposition transcript provided by the City in opposition. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1089, fn. 4.)

## B.

Of Twins Luck's claims of error, one was never presented to the trial court, and one was belatedly raised and not adequately preserved. We conclude those claims are forfeited. In addition, while we have considered all adequately developed arguments needed to resolve this appeal that Twins Luck separately identified under an appropriate heading in its opening brief, to the extent it has asserted additional arguments we have not addressed, they are forfeited. (See *People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 25; Cal. Rules of Court, rule 8.204(a)(1)(B).)

Twins Luck, in turn, faults the City for not responding to all its arguments before the trial court and in this appeal and asks us to deem the points forfeited or conceded. But we decline to do so because the City, as respondent, does not bear the same responsibility to affirmatively establish error.

## 1.

For the first time on appeal, Twins Luck claims the City's Permit denial constituted an unconstitutional condition by "imposing the public use of [its] private property without" compensation. Twins Luck admits it did not raise this issue below but asks us to consider it as a "'pure issue of law on undisputed facts.'" (Citing *C9 Ventures v. SVC-West, L.P.* (2012)

202 Cal.App.4th 1483, 1492.)  Yet we are not convinced the facts are undisputed, so we decline to do so.

Though issues not raised in the trial court generally cannot be raised for the first time on appeal, exceptions have been made for pure legal questions presented on undisputed facts.  (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417.)

Here, however, the parties dispute facts potentially relevant to this issue, including whether (1) the at-issue area is a turnaround, a cul-de-sac, a private driveway, or a private street; and (2) Twins Luck's desired gate would present a danger to the public.  Thus, Twins Luck cannot avoid forfeiture of this claim.

2.

Twins Luck did not adequately preserve for appellate review its claim the City Attorney "acted as prosecutor and as advisor to the decision-maker" in violation of Twins Luck's due process rights.

Whether an attorney served the dual role of advocate and advisor is a "foundational issue of fact" we review for substantial evidence.  (*Temple of 1001 Buddhas v. City of Fremont* (2024) 100 Cal.App.5th 456, 482.)  A trial court's conclusion on unfairness is a question of law reviewed de novo.  (*Ibid.*)

But here, we have no findings of fact or law by the trial court to review. Twins Luck did not assert any due process claim in its trial court petition or opening brief.  Only in its trial court reply brief did Twins Luck raise this argument by accusing the City Attorney's Office of acting "as a conduit" for Twins Luck's "legal adversary" for sharing materials from the neighbor litigation with the City Engineer.  The trial court made no factual findings or legal conclusions on this point in its tentative rulings, perhaps because "[f]or obvious reasons of fairness, points raised for the first time in a reply brief will

8

ordinarily not be considered." (*Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 809.) And at the subsequent hearing, Twins Luck never asked the trial court to rule on the issue or make any related factual findings. Thus, the trial court's final order does not address this claim, and to the extent Twins Luck raised this argument with the trial court, it "did not raise it properly." (See *Nationwide Ins. Co. of America v. Tipton* (2023) 91 Cal.App.5th 1355, 1365.) We decline to act as the factfinder in the first instance on an issue not adequately preserved for review. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 493-494 ["'Our role as an appellate court is not that of factfinder.'"].) Instead, we conclude this claim is forfeited.

3.

Twins Luck faults the City for not responding to all its arguments before the trial court and in this appeal.

As for the trial court briefing, Twins Luck "provides no record citations showing" any of the trial court briefing to substantiate its argument, so we "do not consider this claim." (*In re Champion* (2014) 58 Cal.4th 965, 986.)

Twins Luck also urges us to deem four points conceded by the City for failure to address them or support them with legal authority in its respondent's brief. In support, Twins Luck cites a case in which the *appellant* failed to properly raise an argument with the trial court. (Citing *Nationwide*, 91 Cal.App.5th at p. 1365.) The parties' relative positions on appeal, however, make all the difference here.

The appellant bears the burden to affirmatively demonstrate error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Given a lack of a respondent's brief "does not absolve us of adjudicating the merits of [the] appeal," nor does an unsupported or absent respondent's argument. (*Bustos v. Wells Fargo Bank, N.A.* (2019) 39 Cal.App.5th 369, 374.) Though a

9

respondent's "'failure to respond to an opponent's argument'" or choice to offer only unsupported arguments "'may be unwise as a tactical matter,'" it "'does not warrant'" finding the argument conceded. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1178, fn. 3, quoting *People v. Hill* (1992) 3 Cal.4th 959, 995, fn. 3.) Accordingly, we assess the remaining claims on the merits unless otherwise noted.

C.

Moving to the preserved claims, Twins Luck argues the City abused its discretion in denying the Permit because the City (1) violated a ministerial— as opposed to discretionary—duty that made issuing the Permit mandatory; (2) violated the Municipal Code by considering materials outside the Permit application; and (3) lacked support for its finding that the proposed gate would "create a dangerous and unsafe condition" detrimental to the public's safety. We address each argument in turn.

1.

Twins Luck seeks a writ of mandate under Code of Civil Procedure section 1085. It contends issuing a Permit "is ministerial and therefore mandatory." But we conclude the Permit decision involves discretion based on the City Engineer's judgment of whether the requested construction "shall not adversely affect the public's health, safety, or general welfare." (San Diego Mun. Code, § 129.0715(a)(1).)

"Often, the crucial issue when the petitioner seeks" writ of mandate "relief is whether the act that the petitioner seeks to compel is a *mandatory and ministerial* duty, or, on the contrary, is a *quasi-legislative and discretionary* act." (*CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 279.) As this question involves statutory interpretation, we review it de novo. (*Ibid.*)

10

A ministerial act is one a public officer "is required to perform in a prescribed manner in obedience" to the law and "without regard to his [or her] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists." (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [cleaned up].) It "involves only the use of fixed standards or objective measurements," not "personal, subjective judgment." (*Prentiss v. City of South Pasadena* (1993) 15 Cal.App.4th 85, 90 [cleaned up].)  But "[e]ven if mandatory language appears in the statute creating a duty, the duty is discretionary if the [entity] must exercise significant discretion to perform the duty." (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 915 [cleaned up].)

In *Collins*, despite a "clear ministerial duty" to monitor compliance with certain laws, "how one engages in monitoring for compliance" was found to be "discretionary in nature." (*Collins*, 41 Cal.App.5th at pp. 917-918.)  The appellants "point[ed] to no laws or cases stating any one specific method for monitoring compliance must be used." (*Id.* at p. 918.)  Thus, the court determined "any claim arising from the way in which the state implements such a duty must demonstrate an abuse of discretion." (*Ibid.*)

*Collins* is instructive here.  As Twins Luck notes, the Permit "shall be approved" if the proposed work "is consistent with the Municipal Code" and applicable development standards.  (San Diego Mun. Code, § 129.0730.)  And the City's Land Development Manual states, "[w]ith the exception of some private encroachments within the public right-of-way, the [Permit] review is a ministerial one in that the permit is approved if the regulations are met or denied if the regulations are not met."  The mandatory term "shall" and the City's own characterization in its manual indicate a ministerial duty.

11

Yet Twins Luck's argument for *how* the City violated its purportedly ministerial duty turns on the finding that the proposed gate would present a danger to public safety.[1]  The San Diego Municipal Code prohibits granting a Permit if it would "adversely affect the public's health, safety, or general welfare."  (San Diego Mun. Code, § 129.0715(a)(1).)  That assessment involves "'discretion or judgment in reaching a decision.'"  (*Prentiss*, 15 Cal.App.4th at p. 90.)  Like the appellants in *Collins*, Twins Luck does not point us to any authority setting a fixed standard or objective measurement for determining the potential effect on the public's safety.  And later in its briefing, Twins Luck even refers to the finding of danger as "subjective."  Thus, despite the other ministerial aspects of Permit review, issuing (or denying) the Permit based on the public safety provision involves a discretionary act.

Accordingly, we review for abuse of discretion.  "When a court reviews a public entities' decision for an abuse of discretion, the court may not substitute its judgment for that of the public entity, and if reasonable minds may disagree as to the wisdom of the public entity's discretionary determination, that decision must be upheld."  (*California Public Records Research, Inc. v. County of Stanislaus* (2016) 246 Cal.App.4th 1432, 1443.)  We examine if "the public entity's action was arbitrary, capricious or entirely without evidentiary support, and whether it failed to conform to procedures required by law."  (*Ibid.*)  "On appeal, we independently review the agency's

[1]   Twins Luck attacks other aspects of the City Engineer's Permit denial letter, including the applicability of other Municipal Code and related provisions the City Engineer cited.  It also argues the City's easement does not "require the area to be used as a turnaround."  Twins Luck, however, concedes it was required to obtain a Permit before constructing a gate.  Because a finding of danger to public safety—if substantiated—is a valid basis for denying the Permit, we do not reach the other aspects except to the extent they contribute to our analysis of the public safety issue and the evidence supporting the City's related finding.

determination, applying the same standard of review as the trial court." (*San Diego Public Library Foundation v. Fuentes* (2025) 111 Cal.App.5th 711, 721.)

2.

Twins Luck contends the City failed to follow its own procedures by considering materials outside the Permit application to assess the potential effect of the proposed gate on public safety. We disagree.

Twins Luck's argument hinges on its interpretation of the Permit application requirements. When interpreting statutory language, we give the words "their usual and ordinary meaning." (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 783.)

Relevant here, "[a]fter the application has been deemed complete, the City Manager may not *request* any new or additional materials." (San Diego Mun. Code, § 112.0102(b), italics omitted and added.) Twins Luck reads "may not request" in the Municipal Code to prohibit the City from "review[ing]," "considering," or "accept[ing]" additional information after the deemed-complete date. Yet none of those words is the same as "request." We thus agree with the trial court that this section of the Municipal Code addresses what may be required of a Permit applicant, *not* the scope of materials the City may consider. (San Diego Mun. Code, § 112.0102(b).) In making this determination, the trial court did not, as Twins Luck claims, find "the City did not have to follow the submission requirements." As Twins Luck does not offer any authority limiting what the City may *consider* when assessing a Permit application, it has not shown the City violated its own procedures on this basis.

3.

We thus turn to whether the evidence supports the City Engineer's finding the proposed gate would "create a dangerous and unsafe condition . . .

13

detrimental to the health, safety, and welfare of the public." We conclude it does.

To start, Twins Luck asserts "[t]here is no 'public' at risk" based on a gate that would be "on a private driveway, at the end of a private street, in a gated community." It claims the City concedes this point by noting the street is private and used only by community members and their guests. Twins Luck argues that, as a result, the City lacks standing to protect public rights that "do not exist here." Yet Twins Luck cites no legal authority for its standing argument or for the proposition that members of a gated community and their guests who may need a safe way to turn around are not also members of the public. We are not persuaded, and at any rate the point is forfeited. (See *Champion*, 58 Cal.4th at p. 986.)

Next, Twins Luck takes aim at the safety aspect of the City Engineer's finding. The City Engineer found the proposed gate "will create a dangerous and unsafe condition to vehicular traffic[ and] pedestrian traffic" because it would block the area wide enough "for vehicles to safely navigate the road." Substantial evidence supports this finding.

The record includes a photograph from Twins Luck's next-door neighbor showing cones blocking the street where Twins Luck wants to erect a gate. The neighbor attested "[b]locking the turnaround"—as the cones do and the proposed gate would—"would be dangerous" to pedestrians and drivers. Supporting videos show trucks—including one with an attached trailer—reversing down the length of the street after they could not access the turnaround space. Another video shows a delivery van making a five-point turn to turn around. Twins Luck derides this evidence as "obviously biased" but offers no authority for why the neighbor's purported

14

bias nullifies the materials' evidentiary value.[2]  And while Twins Luck emphasizes none of these videos show "an accident or property damage," that does not mean such things cannot or will not happen.  We discern no abuse of discretion in finding that a truck, particularly one with an attached trailer, reversing down a long road is not "safely navigat[ing] the road," which could present a danger to the driver or others.  The City Engineer's finding the gate would adversely affect public safety is thus not "entirely without evidentiary support." (*California Public Records*, 246 Cal.App.4th at p. 1443.) Accordingly, his denial of the Permit on this basis was not an abuse of discretion.

*　　*　　*

As Twins Luck has not established the City abused its discretion in denying the Permit, we affirm.  We therefore deny Twins Luck's request for declaratory relief.

---

2　　Twins Luck faults the trial court for relying on this evidence in denying the petition and contends by doing so the court "reweigh[ed] the evidence" and "substitut[ed]" its "reasoning for the agency's."  Our focus on review, however, is the agency's determination, not the trial court's.  (See *San Diego Public Library Foundation*, 111 Cal.App.5th at p. 721.)  At any rate, the trial court did not do as Twins Luck accuses.  Rather, it assessed, as required under the standard of review, whether evidence supported the City's safety finding.  As Twins Luck concedes, the City Engineer relied on the administrative record—which includes this evidence—in making his decision.

III.

We affirm the judgment.  The City is entitled to recover its appellate costs.  (Cal. Rules of Court, rule 8.278(a)(1).)


CASTILLO, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.

16