[No. H033275. Sixth Dist. Oct. 27, 2010.]

FRIENDS OF THE JUANA BRIONES HOUSE, Petitioner and Respondent,
v.
CITY OF PALO ALTO, Defendant and Respondent;
JAIM NULMAN et al., Real Parties in Interest and Appellants.

## Counsel

Mitchell Herzog & Klingsporn, Gregory K. Klingsporn and Kent Mitchell for Real Parties in Interest and Appellants.

Brandt-Hawley Law Offices and Susan Brandt-Hawley for Petitioner and Respondent.

No appearance for Defendant and Respondent.

## Opinion

McADAMS, J.—At issue in this case is the applicability of the California Environmental Quality Act (CEQA).[1] This appeal is taken from a judgment granting a writ of mandate, which directs the City of Palo Alto to set aside its approval of a permit to demolish the historic Juana Briones House and to comply with CEQA before considering reissuance of the permit. According to appellants and real parties in interest, Jaim Nulman and Avelyn Welczer, CEQA does not apply to the demolition permit because its issuance is a ministerial act. According to respondent, Friends of the Juana Briones House, issuance of the demolition permit is discretionary and therefore subject to CEQA.

As we explain, based on our reading of the governing municipal code provision in light of pertinent CEQA principles, we agree with appellants that approval of the demolition permit is ministerial. We therefore reverse the judgment.

### BACKGROUND[2]

The seeds of this dispute were planted more than 10 years ago. In 1998, appellants applied to the City of Palo Alto (the City) for a permit to demolish their historic residence, the Juana Briones House. The City's denial of that application resulted in litigation between appellants and the City, which culminated in an appeal to this court.

Following remand in the prior litigation, postappeal proceedings ensued, which resulted in an administrative hearing on appellants' application for a

---

[1] CEQA is codified in the Public Resources Code, starting at section 21000. Unspecified statutory references are to that code.

[2] The background facts, and the procedural history through September 2006, are drawn from this court's opinion in *Nulman v. City of Palo Alto* (Sept. 12, 2006, H027764) (nonpub. opn.).

demolition permit. In 2007, the City approved the application and issued the requested permit. That prompted this action by respondent, which is an unincorporated association of community residents and concerned citizens with an interest in the historic importance of the Juana Briones House.

*The Property*

The Juana Briones House is located at 4155 Old Adobe Road in Palo Alto. The house is U-shaped, with a central section and two wings. The central section, which consists of three rooms, is believed to have been an old adobe, constructed in the 1840's and originally occupied by Juana Briones de Miranda. The structure's two wings, which are of wood-frame construction, were added at some point in the early 1900's.

In 1987, the City designated the Juana Briones House as a historic landmark.

*Prior Owners' Dealings with the Property*

In 1988, the Juana Briones House was owned by Susan Berthiaume, who entered into a historic preservation contract with the City pursuant to the Mills Act (Gov. Code, § 50280 et seq.). The contract was for a rolling 10-year term, subject to either party's written notice of intent to terminate. The contract was binding on the owner's successors.

In October 1989, the Loma Prieta earthquake caused structural damage to the Juana Briones House. Berthiaume undertook to make repairs. After consulting with a general contractor, who did some emergency shoring work, Berthiaume assembled a team of experts, including an architect and an engineer, who drafted plans for more extensive repairs. To fund the repairs, Berthiaume applied for assistance both to the City and to the Federal Emergency Management Agency. Unable to obtain funding from either entity, Berthiaume abandoned plans to repair the property and listed it for sale.

In August 1993, Daniel and Suzanne Meub purchased the property. Without securing permits, the Meubs began making substantial renovations to the wings of the structure. In June 1995, following a complaint about the renovations, the City inspected the property and notified the Meubs that the renovations violated the Mills Act contract.

In February 1996, the City's building inspector wrote to the Meubs, describing the structure as a "dangerous building" and a "substandard residential building" within the meaning of the Palo Alto Municipal Code. The inspector stated that the central portion of the building was not to be occupied

and was to be posted . "restricted use." He also recommended that the structure's wings be vacated. He declared the structure a public nuisance and informed the Meubs that abatement was required, by either "repair or demolition."

The Meubs were unable to fund repairs, and none were undertaken. The Meubs moved out of the property in October 1996.

*Appellants' Ownership of the Property*

In late 1996, appellants Jaim Nulman and Avelyn Welczer became interested in purchasing the property. In consultation with an engineer and an architect, they developed plans for preserving the old adobe portion of the structure and for removing and rebuilding the wings into a Spanish style building that would blend with the old adobe. Their consultants concluded that the extensive remodeling done by the Meubs had compromised any historic integrity of the structure's wings. Towards the end of 1996, appellants presented their proposal to the City, but the City did not approve it. The City believed that the Mills Act contract required that the two wings of the structure be maintained and restored as well as the original three rooms. Appellants had discovered information questioning the architectural and historical significance of the property. Nonetheless appellants took title to the property in February 1997.

During 1997, appellants met numerous times with City representatives regarding the property. The parties could not agree about restoration of the property, and in November of 1997, appellants informed the City that they would not renew the Mills Act contract. After further negotiations during 1998, appellants abandoned efforts to incorporate the old adobe portion of the property into a new structure.

In October of 1998, appellants applied for a demolition permit. The City denied the application, and appellants asked for a de novo hearing under the Palo Alto Municipal Code. No hearing was ever noticed.

*Prior Litigation, 1999–2006*

In February 1999, appellants filed an action against the City for administrative mandamus and declaratory relief. They sought a writ either compelling issuance of the demolition permit or requiring the City to provide a hearing for appeal of the permit denial. Appellants also sought a declaration of rights relieving them of further performance under the Mills Act contract and contractual attorney's fees.

In April 1999, the City answered the petition and filed a cross-complaint for specific performance and declaratory relief. The City sought enforcement of the Mills Act contract, restoration of the property to its historic condition, a declaration of rights under the contract, and attorney's fees.

A bench trial was conducted in December 2002. In April 2003, the court filed its initial statement of decision and judgment, which denied appellants' writ petition and found for the City on its cross-complaint to enforce the Mills Act contract.

Appellants successfully moved for a new trial. In June 2003, the court set aside the statement of decision and judgment and it reopened the case for further proceedings, which began in March 2004.

In April 2004, the court issued a statement of decision following the new trial. The court found against the City on its cross-complaint for specific performance of the Mills Act contract. The court also granted appellants' writ petition, directing the City to conduct hearings, as required by the Palo Alto Municipal Code, on appellant's application for a demolition permit. Judgment was entered in June 2004.

The City appealed the judgment as well as the court's subsequent award of attorney's fees. In September 2006, this court affirmed the judgment and the fee award in an unpublished opinion filed (*Nulman v. City of Palo Alto, supra,* H027764). A remittitur issued in November 2006.

*Postappeal Proceedings, 2006–2007*

In early October 2006, the parties' attorneys began communicating about further proceedings. Among other things, the attorneys discussed the applicability of CEQA. Initially, the City's attorney indicated the possibility that "CEQA may be applicable to a demolition permit application." Appellants' attorney acknowledged his understanding that the City's director of planning and community environment would be making the CEQA determination. In early January 2007, the City's attorney advised appellants' attorney that the City had "been evolving in its positions re CEQA." Shortly thereafter, he sent appellants' attorney a draft stipulation for a supplemental statement of decision, which reflected the City's determination that CEQA does not apply because the demolition permit is ministerial.

The attorneys' communications culminated in the parties' stipulation to a supplemental statement of decision and a postappeal modified judgment. As reflected in the judgment, the parties stipulated to various factual and legal determinations, including these: demolition of the Juana Briones House "is

governed by Palo Alto Municipal Code ('PAMC') § 16.49.070"; any allowable moratorium period under that provision had expired by November 1999; a "Director's Hearing" before the director of planning and community environment was the proper forum for consideration of appellants' demolition permit application; issuance of the permit is ministerial in nature and CEQA thus does not apply; and the condition of the structure presents a threat to the public. The judgment also limits the "subject matter" of the director's hearing to "whether Plaintiffs should immediately be granted a demolition permit pursuant to their original application" and "whether voluntary contributions by Plaintiffs of artifacts relating to the Subject Property" should be accepted by the City or other interested persons, and if so, whether the director should facilitate an arrangement for transferring those artifacts. Finally, the judgment provides that the director's decision was not subject to administrative appeal and that the postappeal modified judgment likewise was not subject to appeal.

On January 22, 2007, in closed session, the Palo Alto City Council considered and approved the stipulated supplemental statement of decision and the stipulated postappeal modified judgment.

The following week, the supplemental statement of decision and modified judgment were presented to and signed by Judge Herlihy, who had presided over the 2002–2004 trials. The court filed both documents on January 29, 2007.

As required by the judgment, the City held a director's hearing to consider appellants' application for a demolition permit. At the hearing, held February 26, 2007, the director entertained oral comments from planning staff, appellants' attorney, and members of the public. The director noted the limited scope of his decision in light of the judgment, which determined that approval was ministerial.

The director rendered his written decision in a letter dated March 7, 2007. In his decision, the director described the hearing, summarized the pertinent background, and set forth his determination that the demolition permit should issue immediately, conditioned on implementation of appellants' offer to allow preservation activities prior to demolition.[3]

---

[3] More specifically, the director made these three findings:

"(1) The statutory conditions for issuance of a demolition permit, set forth in PAMC sections 16.04.110 and 16.49.70, have been met. The subject structure is vacant and no notification to present occupants is therefore required. The moratorium period that arguably pertains to issuance of a permit in this instance has elapsed, so no delay in issuance is authorized. Accordingly, Applicants should immediately be granted a demolition permit pursuant to their original application, subject to the additional conditions set forth below.

"(2) Applicants have made an offer to community members with an interest in the Briones House ('Interested Parties') to allow certain activities to take place at the subject property prior

On April 10, 2007, the City issued a demolition permit to appellants for the Juana Briones House.

*Current Litigation*

On April 11, 2007, respondent filed a petition for writ of mandamus in the trial court. The petition alleged that the City's approval of the demolition permit "violated key mandates of the California Environmental Quality Act and its own Municipal Code." Respondent sought a writ commanding the City to set aside its approval of the demolition permit and "to refrain from further consideration of approval of demolition of the Juana Briones House until full compliance with CEQA and the Palo Alto Municipal Code is achieved, including referral to the historic resources board, preparation and certification of an adequate EIR, and adoption of feasible mitigations and alternatives . . . ."

The case was assigned to Judge Nichols.

In May 2007, respondent entered a stipulation with the City in which the City agreed that it would not oppose the petition on the merits in the trial court, and respondent agreed that it would not seek attorney's fees or costs from the City.

In June 2007, the court granted respondent's motion for a stay of the demolition.

In July 2007, appellants demurred to the petition. Appellants based the demurrer on several grounds, including the doctrines of res judicata and collateral estoppel. The court overruled the demurrer.

In June 2008, the court heard respondent's petition on the merits. In briefs submitted to the court prior to the hearing, respondent argued that the demolition permit was discretionary and thus subject to CEQA under the applicable municipal code provision, section 16.49.070 of the Palo Alto Municipal Code (PAMC). In their brief, appellants took the opposing view, arguing that the permit is ministerial. After entertaining oral argument, the court took the matter under submission. Thereafter, by formal order, the court granted the petition. As reflected in its order, the court had "no trouble finding that PAMC § 16.49.070 is at least partially discretionary on its face" and thus subject to CEQA.

---

to any demolition work that is to be undertaken. The following voluntary actions by the Applicants have been offered to and accepted by the Foundation or other Interested Parties. . . .

"(3) The Director finds that it is appropriate for him to facilitate an arrangement whereby the Applicants voluntarily make available to Interested Parties physical artifacts and a tangible historical record of the Briones House. . . ."

In August 2008, the court issued its judgment, which states in part: "The Petition is GRANTED for the reasons delineated in the Order. The City abused its discretion and failed to proceed in the manner required by law when it approved the subject demolition permit upon a claimed statutory exemption from the California Environmental Quality Act. The permit is not wholly ministerial but has discretionary elements." The court directed issuance of a writ of mandamus, "ordering the City to set aside its approval of the subject demolition permit application and to refrain from further consideration of the demolition permit application or issuance of the permit unless and until it fully complies with CEQA."

Appellants brought this timely appeal.

## CONTENTIONS

Appellants challenge both the August 2008 judgment granting the writ petition and the July 2007 order overruling their demurrer to the writ petition. Concerning the judgment, appellants argue that the trial court erred in concluding that approval of the demolition permit was discretionary and that CEQA therefore applies. Appellants also take issue with the trial court's determination that the City violated CEQA by not issuing findings to support its exemption determination. In their challenge to the order overruling their demurrer, appellants assert that the court erred in allowing respondent to relitigate issues that were determined in the prior action.

Respondent defends both the judgment and the order. First, as to the judgment, respondent maintains that the approval of the demolition permit is discretionary and thus not statutorily exempt from CEQA. Respondent also defends the judgment on two grounds that the trial court did not reach: failure to provide for a statutorily mandated administrative appeal of the exemption decision, and failure to follow municipal code provisions requiring delay of demolition permits for historic structures. Second, as to the order overruling appellants' demurrer, respondent maintains that appellants' prior judgment against the City is irrelevant, because that "litigation did not encompass any CEQA claims."

The City has not appeared in this appeal.

## DISCUSSION

As a framework for our analysis of the parties' contentions, we begin with an overview of the legal principles that govern this case.

## I. *Legal Principles*

### A. *CEQA*

Under CEQA's statutory directive, "the long-term protection of the environment . . . shall be the guiding criterion in public decisions." (§ 21001, subd. (d).) As an aid to implementing CEQA, the state Resources Agency has issued a set of regulations, called Guidelines for the California Environmental Quality Act (Guidelines).[4]

"Together, CEQA and the Guidelines protect a variety of environmental values. Historic resources are among them." (*Architectural Heritage Assn. v. County of Monterey* (2004) 122 Cal.App.4th 1095, 1100 [19 Cal.Rptr.3d 469]; see § 21084.1; Guidelines, § 15064.5.)

#### 1. *No application to ministerial decisions*

CEQA applies only to discretionary projects and approvals; it does not apply to purely ministerial decisions. (§ 21080, subds. (a), (b)(1); Guidelines, § 15268, subd. (a); *Health First v. March Joint Powers Authority* (2009) 174 Cal.App.4th 1135, 1142–1143 [96 Cal.Rptr.3d 290].)

"The statutory distinction between discretionary and purely ministerial projects implicitly recognizes that unless a public agency can shape the project in a way that would respond to concerns raised in an EIR, or its functional equivalent, environmental review would be a meaningless exercise." (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 117 [65 Cal.Rptr.2d 580, 939 P.2d 1280], citing *Friends of Westwood, Inc. v. City of Los Angeles* (1987) 191 Cal.App.3d 259, 267 [235 Cal.Rptr. 788] (*Friends of Westwood*).) "The distinction between ministerial and discretionary projects applies as well when an historic building is involved. Whether CEQA applies in the first place depends not on the historic character itself but on whether the *project* is ministerial or discretionary." (*Prentiss v. City of South Pasadena* (1993) 15 Cal.App.4th 85, 91 [18 Cal.Rptr.2d 641].)

"If, under the applicable substantive law, an agency's approval is ministerial rather than discretionary, evaluation of environmental impact is unnecessary and CEQA does not apply." (*Prentiss v. City of South Pasadena, supra*, 15 Cal.App.4th at p. 90.) On the other hand, if the project is discretionary, "the agency may not grant the permit without first determining in writing whether the proposal has a significant environmental impact." (*People v. Department of*

---

[4] The Guidelines are located at title 14 of the California Code of Regulations, starting at section 15000. Unspecified guideline references are to those regulations.

*Housing & Community Dev.* (1975) 45 Cal.App.3d 185, 192 [119 Cal.Rptr. 266].) "Mandamus lies to set aside a permit issued without that determination." (*Ibid.*)

The threshold determination of CEQA's applicability thus turns on whether the "project qualifies as a 'discretionary' rather than a 'ministerial' action." (*Friends of Westwood, supra,* 191 Cal.App.3d at p. 262.)

## 2. *Distinguishing ministerial and discretionary decisions*

The key terms "ministerial" and "discretionary" are not explicitly defined in CEQA's statutory provisions. (*Friends of Westwood, supra,* 191 Cal.App.3d at p. 266; *San Diego Trust & Savings Bank v. Friends of Gill* (1981) 121 Cal.App.3d 203, 210 [174 Cal.Rptr. 784] (*Friends of Gill*).) But those terms are defined in the Guidelines. (Guidelines, §§ 15357, 15369.) And they are explicated in judicial decisions.

### a. *Ministerial*

As stated in the Guidelines: " 'Ministerial' describes a governmental decision involving little or no personal judgment by the public official as to the wisdom or manner of carrying out the project. The public official merely applies the law to the facts as presented but uses no special discretion or judgment in reaching a decision. A ministerial decision involves only the use of fixed standards or objective measurements, and the public official cannot use personal, subjective judgment in deciding whether or how the project should be carried out." (Guidelines, § 15369.)

Case law confirms that issuance of a permit is ministerial when it "is governed by fixed design and construction specifications in statute or regulation," such that "the official decision of conformity or nonconformity leaves scant room for the play of personal judgment." (*People v. Department of Housing & Community Dev., supra,* 45 Cal.App.3d at p. 193; see also, e.g., *Leach v. City of San Diego* (1990) 220 Cal.App.3d 389, 393 [269 Cal.Rptr. 328] ["decision to draft water from one particular reservoir to another within this system" was ministerial where it did "not involve personal judgment as to the wisdom or manner of carrying it out"]; *Leach,* at p. 394 [decision "was not based on anyone's personal opinion, but on the conditions existing at the time"]; cf. *Mountain Lion Foundation v. Fish & Game Com., supra,* 16 Cal.4th at p. 118 ["standard is not so fixed and objective as to eliminate the need for judgment and deliberation"].)

In keeping with the Guidelines, judicial decisions "have adopted a restrictive definition of 'ministerial projects' considered exempt from environmental

review." (*Friends of Westwood, supra,* 191 Cal.App.3d at p. 271.) Those decisions honor the principle that "CEQA must 'be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.' " (*Ibid.,* italics omitted, quoting *Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].)

### b. *Discretionary*

The Guidelines describe "discretionary" projects as those requiring "the exercise of judgment or deliberation when the public agency or body decides to approve or disapprove a particular activity, as distinguished from situations where the public agency or body merely has to determine whether there has been conformity with applicable statutes, ordinances, or regulations." (Guidelines, § 15357.)

Like the Guidelines, case law describes a decision as discretionary when it involves "relatively personal decisions addressed to the sound judgment and enlightened choice of the administrator." (*People v. Department of Housing & Community Dev., supra,* 45 Cal.App.3d at p. 193; see also, e.g., *Citizens for Non-Toxic Pest Control v. Department of Food & Agriculture* (1986) 187 Cal.App.3d 1575, 1583 [232 Cal.Rptr. 729] [decision discretionary where agency determined whether pest could be eradicated "and what method would be most effective in doing so"].) Further, an approval is discretionary when the agency has the authority to impose significant conditions. (*Friends of Westwood, supra,* 191 Cal.App.3d at p. 269 [building permit approval discretionary where "the city retains discretion to require substantial changes in building design"]; *Citizens Assn. for Sensible Development of Bishop Area v. County of Inyo* (1985) 172 Cal.App.3d 151, 175 [217 Cal.Rptr. 893] [decision discretionary where agency could "condition the right to an encroachment permit upon 'the location and the manner' of the encroachment"].) In one case, *Friends of Gill,* issuance of a demolition permit was held discretionary in light of the city's ability to delay approval of the permit in order to seek alternatives. (*Friends of Gill, supra,* 121 Cal.App.3d at p. 214.)

The Guidelines treat projects of a mixed nature as discretionary. "Where a project involves an approval that contains elements of both a ministerial action and a discretionary action, the project will be deemed to be discretionary and will be subject to the requirements of CEQA." (Guidelines, § 15268, subd. (d); see *Miller v. City of Hermosa Beach* (1993) 13 Cal.App.4th 1118, 1139 [17 Cal.Rptr.2d 408]; *Friends of Westwood, supra,* 191 Cal.App.3d at pp. 270–271; *Friends of Gill, supra,* 121 Cal.App.3d at p. 211.) Furthermore, "where there are doubts whether a project is ministerial or discretionary, they

should be resolved in favor of the latter characterization." (*Citizens for Non-Toxic Pest Control v. Department of Food & Agriculture, supra*, 187 Cal.App.3d at p. 1583.)

c. *Functional test*

■ In applying these principles, the pertinent judicial decisions have developed a "functional" test for distinguishing ministerial from discretionary decisions. (*Friends of Westwood, supra*, 191 Cal.App.3d at p. 272.) That test examines whether the agency has the power to shape the project in ways that are responsive to environmental concerns. (*Id.* at p. 267; *Mountain Lion Foundation v. Fish & Game Com., supra*, 16 Cal.4th at p. 117.) Under this functional test, a project qualifies as ministerial "when a private party can *legally compel* approval without any changes in the design of its project which might alleviate adverse environmental consequences." (*Friends of Westwood*, at p. 267; accord, *Miller v. City of Hermosa Beach, supra*, 13 Cal.App.4th at pp. 1141–1142.) "Conversely, where the agency possesses enough authority (that is, discretion) to deny *or modify* the proposed project on the basis of environment consequences the EIR might conceivably uncover, the permit process is 'discretionary' within the meaning of CEQA." (*Friends of Westwood*, at p. 272.)

3. *Particular actions as ministerial or discretionary*

a. *Building permits*

■ Under the Guidelines, issuance of building permits is ministerial "if the ordinance requiring the permit limits the public official to determining whether the zoning allows the structure to be built in the requested location, the structure would meet the strength requirements of the Uniform Building Code, and the applicant has paid his fee." (Guidelines, § 15369.) The Guidelines also state: "In the absence of any discretionary provision contained in the local ordinance or other law establishing the requirements for the permit, license, or other entitlement for use, the following actions shall be presumed to be ministerial: [¶] (1) Issuance of building permits." (Guidelines, § 15268, subd. (b)(1).)

Like the Guidelines, case law recognizes that approval of a building permit may be ministerial or discretionary. "Ordinarily issuance of a building permit for a project meeting the criteria of the applicable zoning ordinance and Uniform Building Code is a ministerial project to which CEQA does not apply." (*Prentiss v. City of South Pasadena, supra*, 15 Cal.App.4th at p. 89; see also, e.g., *Court House Plaza Co. v. City of Palo Alto* (1981) 117 Cal.App.3d 871, 883 [173 Cal.Rptr. 161] ["the issuance of building and use

permits" is "generally ministerial in character"].) "Run-of-the-mill building permits *are* 'ministerial' actions not requiring compliance with CEQA." (*Friends of Westwood, supra,* 191 Cal.App.3d at p. 277.) "Building permits may sometimes be involved, however, in discretionary projects subject to CEQA." (*Prentiss v. City of South Pasadena,* at p. 91.) "This includes when substantial discretion exists in the local ordinance [citation], when the permit is integral to a larger project subject to CEQA [citation] or when other law vests discretion in connection with the permit [citation]." (*Ibid.*)

### b. *Demolition permits*

■ No Guidelines provision specifically addresses demolition permits. But as with building permits, case law recognizes that the approval of demolition permits may be ministerial or discretionary. (*Environmental Law Fund, Inc. v. City of Watsonville* (1981) 124 Cal.App.3d 711, 717 [177 Cal.Rptr. 542] [where "neither redevelopment agency approval nor design review commission approval was required" for demolition permit, its "issuance was a ministerial act"]; cf. *Adams Point Preservation Society v. City of Oakland* (1987) 192 Cal.App.3d 203, 207 [237 Cal.Rptr. 273] [appellants did not contend "that the issuance of the demolition permit by City was a discretionary act"]; *First Presbyterian Church v. City of Berkeley* (1997) 59 Cal.App.4th 1241, 1257 [69 Cal.Rptr.2d 710] ["a demolition permit application may be subject to discretionary review on the basis of land use regulations dealing with environmental or historical preservation concerns"]; *Friends of Gill, supra,* 121 Cal.App.3d at p. 211 [local ordinance "contemplated some ultimate discretionary act in the issuance of the permit"].)

### B. *Appellate Review*

As the parties recognize, the legal determination of whether an approval is "exempt from CEQA review as a ministerial action" is subject to our de novo review. (*Health First v. March Joint Powers Authority, supra,* 174 Cal.App.4th at p. 1142.) "The dispositive issue involves statutory interpretation as applied to essentially undisputed facts, and thus presents a question of law which we review independently of the trial court." (*Prentiss v. City of South Pasadena, supra,* 15 Cal.App.4th at p. 89.)

■ In construing a statute or an ordinance, we look first to the language of the provision itself. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166]; see *County of Madera v. Superior Court* (1974) 39 Cal.App.3d 665, 668 [114 Cal.Rptr. 283] ["rules applying to the construction of statutes apply equally to ordinances"].) If the language "is clear and unambiguous our inquiry ends. There is no need for judicial construction and a court may not indulge in it." (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].)

## II. *Application*

### A. *Background*

■ The local law that governs appellants' demolition permit application is contained in PAMC section 16.49.070. That provision comes into play when permission is sought to demolish historic structures—such as the Juana Briones House—that are categorized as "significant buildings other than in the downtown area." (PAMC, § 16.49.070, boldface omitted.) Briefly stated, section 16.49.070: (a) requires a permit application and imposes a 60-day moratorium period, (b) requires referral to the City's Architectural Review Board or Historical Resources Board, and (c) permits an extension of the moratorium for up to one year coupled with the possibility of public notice that the historic structure is available.[5]

The parties disagree about whether the provision is ministerial or discretionary.

According to appellants, "PAMC § 16.49.070 does not give the City or any City official any discretion to decide 'whether' the permit would issue or 'how' the demolition would be 'carried out.'" As appellants read the provision, "it grants no power to do anything but delay. Neither the HRB [(Historic Resources Board)] nor the [City] Council has any power to

---

[5] The full text of PAMC section 16.49.070 reads as follows:

"(a) Application and Moratorium. Any person wishing to demolish a contributing building in the downtown area or a significant building other than downtown shall file an application for a demolition permit in accordance with the procedures established by Chapter 16.04 of this code. With the application, the applicant shall submit one clear photograph of the front of the building and such other information as may be required by the chief building official in accordance with the requirements for the demolition permit. A copy of the application and photograph shall be forwarded to the city council as an information item in the next council packet. The chief building official may not take action on the application for sixty days following receipt of a completed application.

"(b) Referral to Architectural Review Board or Historical Resources Board. During the sixty-day moratorium, the chief building official shall refer the application for a permit to demolish to the architectural review board, in the case of all buildings other than single-family and duplex residences, for review and recommendation. The architectural review board shall refer the application to the historic resources board for recommendations on the historical and/or architectural significance of the building and the appropriate time for the moratorium. A demolition permit application for a single-family or duplex residence shall be referred to the historic resources board for recommendation.

"(c) Council Action. The architectural review board, the historic resources board, or any interested person may recommend that the council extend the moratorium. The council shall agendize such a request and may extend the sixty-day period for a period up to one year. In the case of an extended moratorium, the council, upon the recommendation of the historic resources board, may require that appropriate and reasonable public notice of the availability of the structure be provided by the applicant."

determine *whether* the permit will ultimately issue, or to make any *substantial modifications or change* to the demolition permit, and so PAMC § 16.49.070 gives the City no discretion."

According to respondent: "The mandatory moratorium qualifies the City's ordinance as discretionary." In respondent's view: "At the end of the delay period provided by the Palo Alto Municipal Code, it is not inevitable that the City will be compelled to grant the application, as Nulman suggests. Delay implicitly gives time to consider alternatives, including providing incentives to the owner or even acquisition by eminent domain." In other words, "the moratorium period required by the Palo Alto Municipal Code gives the Historic Resources Board and the City Council time to consider whether and how to avoid the detrimental impacts of demolition of an historic site."

B. *Analysis*

We conclude that approval of the demolition permit at issue here is a ministerial act. Our conclusion is based on the plain language of PAMC section 16.49.070, read in the context of pertinent CEQA principles.[6]

1. *Under the plain language of the governing municipal code provision, issuance of the demolition permit was ministerial.*

As explained above, when a decision "involves only the use of fixed standards or objective measurements," it is ministerial. (Guidelines, § 15369.) That is the case here. Section 16.49.070 of PAMC incorporates two such standards by reference. It requires a demolition permit application to be filed "in accordance with the procedures established by Chapter 16.04" of PAMC. (PAMC, § 16.49.070, subd. (a).) Under the referenced chapter, there are two prerequisites for a permit to demolish any residential structure: the residence must be vacant and any tenants must be notified. (*Id.*, § 16.04.060.) Those

---

[6] Our plain language determination limits the scope of our analysis. Given that determination, we need not and do not reach the parties' other arguments on the question of whether the approval is ministerial. Those arguments include (1) appellants' contention that the City's interpretation of the provision as ministerial is entitled to deference; (2) appellants' contention that "the City's determination must be evaluated . . . in light of the undisputed Record fact that the Structure had been declared a public nuisance for more than a decade" and respondent's countervailing argument that "the allegedly dangerous condition of the property" is not relevant; (3) appellants' contention that any discretion under the ordinance had long since expired when the exemption determination was made; and (4) respondent's countervailing argument that "the character of an ordinance is either discretionary or ministerial *at the outset of its application* and does not change character with the passage of time."

Further, because our determination that approval is ministerial compels reversal of the judgment, we need not and do not address the parties' arguments concerning the effect of the prior litigation, which was put at issue below by appellants' unsuccessful demurrer.

prerequisites impose fixed standards, capable of objective assessment. There is no dispute that appellants satisfied those prerequisites here.

In addition to the above standards, PAMC section 16.49.070 also contains provisions for delay in issuing a demolition permit. (See PAMC, § 16.49.070, subd. (a) [automatic 60-day moratorium]; *id.*, subd. (c) [discretionary extension of moratorium for up to one year].) The parties disagree on the effect of the delay provisions. In setting forth their positions on this issue, both parties extensively discuss *Friends of Gill, supra,* 121 Cal.App.3d 203. Respondent relies heavily on the case, while appellants seek to distinguish it. Appellants also argue that subsequent decisions have narrowly construed its holding.

The pivotal legal question is whether the authority to delay a project—without more—renders approval discretionary.

Respondent answers that question in the affirmative, under the authority of *Friends of Gill, supra,* 121 Cal.App.3d 203. According to respondent, the court there "found that the San Diego Municipal Code was discretionary as to issuance of demolition permits for an historic resource, *solely* because the Code authorized a demolition delay virtually identical to the Palo Alto ordinance."

We do not read *Friends of Gill* so broadly. We acknowledge the court's statement that "the specific sections of the San Diego Municipal Code dealing with demolition permits only authorize procedural delays in the issuance of the permit." (*Friends of Gill, supra,* 121 Cal.App.3d at p. 214.) But the court also observed: "It is apparent San Diego Municipal Code section 26.02 contemplated some ultimate *discretionary* act in the issuance of the permit *because* under its provisions *the Board must investigate and confer* with the responsible parties and under these powers impliedly will attempt to secure alternatives where appropriate." (*Id.* at p. 211, italics added.) The apparent source of the board's discretionary power was the directive in the San Diego ordinance that the " 'Board shall take such steps within the scope of its powers and duties as it determines are necessary for the preservation of the historical site.' " (*Id.* at p. 206, fn. 2.) In discussing discretion, the court also explained: "Since the authority of the City under the historic site demolition ordinance only extends to granting stays, it can be argued that the actual issuance of the permit is ministerial. Because of the *discretion* that *must be exercised* during the stay period, it would be at worst a mixed discretionary and ministerial act. In that event, the law requires it be deemed discretionary in nature [citations]." (*Id.* at p. 212, fn. 4, italics added.) Finally, the court held, "the City had discretion to deny the permit if a feasible alternative was ever formulated during the period of delay." (*Id.* at p. 214.)

The ordinance in this case contains no such discretionary features. We find no provision requiring the board to "investigate and confer" like that found in the San Diego ordinance by the *Friends of Gill* court. (*Friends of Gill, supra,* 121 Cal.App.3d at p. 211.) We find no provision for "discretion that must be exercised during the stay period" like the *Friends of Gill* court did. (*Id.* at p. 212, fn. 4.)

Respondent states that Palo Alto's board—like San Diego's—"must review a demolition application and make a 'recommendation.' " From that premise, respondent argues: "For the recommendation to be meaningful, the City's authority to alter the proposed demolition is implied." (See *Friends of Gill, supra,* 121 Cal.App.3d at p. 211 [board "impliedly will attempt to secure alternatives where appropriate"].)

In the first place, we question the premise of the argument. We find nothing in the ordinance that requires the board to make a recommendation. The provision states only that any "demolition permit application for a single-family or duplex residence shall be referred to the historic resources board for recommendation." (PAMC, § 16.49.070, subd. (b).)[7] Furthermore, on the face of the ordinance, the board's recommendation power is limited to asking "that the council extend the moratorium." (PAMC, § 16.49.070, subd. (c).)

Moreover, as a matter of judicial restraint, we decline to read respondent's suggested implication into the ordinance. Under settled rules of construction, when the language of a provision is "clear and unambiguous our inquiry ends." (*Diamond Multimedia Systems, Inc. v. Superior Court, supra,* 19 Cal.4th at p. 1047.) A "court is not free to insert" language into a clear provision. (*Id.* at p. 1052.) The plain language of the ordinance controls here, and it contains no such implied power.

Our unwillingness to introduce implied terms into the provision's clear language is bolstered by a comparison of the subject provision (PAMC, § 16.49.070), which governs the issuance of demolition permits for significant historic buildings *outside* the downtown area, with the immediately preceding provision (PAMC, § 16.49.060), which governs demolition permits for such buildings *within* the downtown area. As provided in subdivision (a) of the provision governing downtown structures, no demolition permit "shall be issued . . . unless" one of three things occurs: (1) the city council determines that "the property retains no reasonable economic use"; (2) specified officials

---

[7] The quoted language is in contrast to that of the immediately preceding ordinance provision, which governs the issuance of demolition permits for significant buildings located within the downtown area. As provided there, the historic resources board "shall" place such applications on its agenda "for hearing and recommendation." (PAMC, § 16.49.060, subd. (c)(1).)

determine that demolition is required for public safety; or (3) the city council determines "that demolition . . . will not have a significant effect on the achievement of the purposes of" the preservation ordinance. (PAMC, § 16.49.060, subd. (a)(1)–(3).) Furthermore, as reflected in subdivision (c) of that provision, the city council has express authority to "approve, disapprove or approve the applications with conditions," and it also has the obligation to make specified findings. (*Id.*, subd. (c)(2).) By contrast, the provision that governs here neither requires a predicate determination nor grants explicit authority to disapprove a permit or impose conditions on its approval. As a comparison of the two provisions demonstrates, the City knows how to legislate with greater specificity when it intends to, a circumstance that undercuts respondent's argument for implying language into section 16.49.070. (*Diamond Multimedia Systems, Inc. v. Superior Court, supra,* 19 Cal.4th at p. 1053.)

In any event, as other courts have recognized, an agency's ability to impose delay does not make its decision discretionary. As stated in the *Leach* case: "The only decision to be made is the timing of the drafting, not the method. Even the timing decision is one which calls for a given response to a given fact situation in a manner consistent with the law." (*Leach v. City of San Diego, supra,* 220 Cal.App.3d at p. 393.) The same is true here. As in *Leach,* the decision "is ministerial because there is no other choice" available to the agency. (*Id.* at p. 394.)

### 2. The City did not have authority to impose conditions on approval of the permit that would render it discretionary.

As explained above, permit approval is discretionary if the agency has authority to condition the permit in environmentally significant ways. (*Mountain Lion Foundation v. Fish & Game Com., supra,* 16 Cal.4th at p. 117 [decision discretionary where the "public agency can shape the project in a way that would respond to concerns raised in an EIR"]; *Friends of Westwood, supra,* 191 Cal.App.3d at p. 269 [building permit approval discretionary where "the city retains discretion to require substantial changes in building design"].)

In this case, respondent argues that "the Director in fact placed conditions on demolition." In support of that argument, respondent first cites the requirement that appellants "file a tree disclosure statement with the City describing a plan to protect a significant tree located near the house." But respondent makes no argument that the tree protection requirement invests the City with any discretion to deny the demolition permit. Nor would such an argument be availing. The standards reflected in the tree disclosure statement filed here appear to be fixed, requiring objectively verifiable

representations that protected trees will be fenced before demolition and that no activity will take place within the defined dripline of any protected tree.

As further support for its argument, respondent states: "The Director also imposed six specific conditions in his 'findings of approval;' requiring, for instance, a photographic survey of the historic house, preservation of native plants, and the donation of an exterior wall plaque." In respondent's view, "The fact that these mitigations were acceptable to Nulman does not remove their status as conditions; developers often negotiate project conditions with lead agencies."

We disagree with respondent's characterization of the six referenced items. Although the director's written decision refers to them as "additional conditions," that document makes clear that they were "voluntary actions" by appellants that were "offered to and accepted by the [Juana Briones Heritage] Foundation or other Interested Parties." (Cf. *Prentiss v. City of South Pasadena, supra,* 15 Cal.App.4th at p. 87 [distinguishing "laws designed to *encourage voluntary* historical preservation by private property owners and zoning laws designed to *require* historical preservation"].)

In any event, conditions alone do not render a project discretionary. That notion was expressed by the director at the administrative hearing, when he observed that "typically the city, when we issue permits, we issue permits with conditions. . . . Whether that permit is ministerial or discretionary, it has certain actions that are required." The same conclusion is reflected in case law. As stated in the *Court House Plaza* case, "The fact that [an] administrator may impose conditions on the permit does not change the essentially ministerial character of the . . . administrator's function." (*Court House Plaza Co. v. City of Palo Alto, supra,* 117 Cal.App.3d at p. 883.) The mere presence of conditions thus is not dispositive. The pertinent inquiry is whether appellants could "*legally compel* approval without any changes in the design of its project which might alleviate adverse environmental consequences." (*Friends of Westwood, supra,* 191 Cal.App.3d at p. 267; accord, *Miller v. City of Hermosa Beach, supra,* 13 Cal.App.4th at pp. 1141–1142.) Here, appellants' right to the permit was not dependent on their voluntary concessions, and appellants could have compelled issuance of the demolition permit without them. Appellants' concessions thus do not change the ministerial nature of the permit.

3. *The possibility of a subsequent building permit does not change the result.*

Respondent argues that the demolition permit sought by appellants "was not a stand-alone project; as with most such permits, the goal was to clear the

site for another construction project." As respondent's argument reflects, there is a rule against segmentation of a project. (Guidelines, § 15378, subds. (a) & (c) [CEQA project includes "the whole of an action"]; *Orinda Assn. v. Board of Supervisors* (1986) 182 Cal.App.3d 1145, 1171 [227 Cal.Rptr. 688] [agency may not "subdivide a single project into smaller individual subprojects" to avoid environmental review]; *Communities for a Better Environment v. City of Richmond* (2010) 184 Cal.App.4th 70, 98–101 [108 Cal.Rptr.3d 478] [discussing segmentation cases].) In this case, according to respondent, "both demolition and construction components are part of the CEQA project." For that reason, respondent maintains, "the entire project falls under review."

In reply, appellants first assert that respondent is barred from raising this argument on appeal, because it was not proffered at the February 2007 director's hearing. In making that assertion, appellants rely on section 21177. Next, appellants contend, even if respondent's "whole of the action" argument had not been forfeited, the theory on which it rests was rejected in *Adams Point Preservation Society v. City of Oakland, supra*, 192 Cal.App.3d 203. Moreover, appellants argue, the record demonstrates that the underlying reason for the demolition permit was to abate a recognized nuisance.

As we now explain, even assuming that the segmentation issue is properly before us, respondent's argument does not persuade us to a different result here.

We begin by observing that the petition in this case did not allege that the demolition permit was part of a larger project that included a building permit. (See *Adams Point Preservation Society v. City of Oakland, supra*, 192 Cal.App.3d at p. 207.) Lacking such an allegation, "demolition of the existing dwelling therefore constitutes a 'project' separate from the alleged anticipated construction of another building. The building permit should be reviewed independently, if and when it is issued, to determine whether CEQA applies." (*Id.* at p. 208.) Here, however, though not alleged in its petition, respondent did raise the "whole of the action" argument below, in briefs filed with the trial court prior to the hearing on the petition. And appellants met that argument in their own trial brief.

Regardless of whether the segmentation argument was adequately raised in the trial court, it was not presented at the director's hearing in February 2007. That earlier administrative hearing is the more critical juncture for purposes of assessing forfeiture under the statute.

Section 21167 establishes the time for commencing an "action or proceeding to attack, review, set aside, void, or annul the following acts or

decisions of a public agency on the grounds of noncompliance" with CEQA. Section 21177 prohibits any such action "unless the alleged grounds for noncompliance with [CEQA] were presented to the public agency orally or in writing by any person during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination." (§ 21177, subd. (a).) Section 21177 thus embodies a statutory "exhaustion requirement" that "applies where (1) CEQA provides a public comment period, or (2) there is a public hearing before a notice of determination is issued." (*Azusa Land Reclamation Co. v. Main San Gabriel Basin Watermaster* (1997) 52 Cal.App.4th 1165, 1210 [61 Cal.Rptr.2d 447].) "CEQA provides for public comment on a negative declaration and an EIR. [Citation.] By contrast, CEQA does not provide for a public comment period before an agency decides a project is exempt." (*Ibid.*)

In this case, the City conducted a public hearing prior to issuance of the demolition permit. The record of that hearing contains no indication that respondent even made a formal appearance, much less an argument that demolition was part of a larger project also requiring a building permit. Although at least one of respondent's members spoke at the hearing, she made no reference to this point. Significantly, however, the director's hearing *followed* the exemption determination, which was reflected in the stipulated postappeal modified judgment filed the month before. It thus is not clear that the statutory exhaustion requirement of section 21177 applies here, such that respondent's argument is forfeited for failure to raise it before the administrative body.

In any event, on the merits, respondent's segmentation argument fails on the law, if not on the facts.

With respect to the facts, respondent cites appellants' 1998 demolition permit application in arguing that a building permit necessarily is part of the project. A note on that application states: "A demolition permit may not be issued for a structure last used for residential purposes until a building permit for a replacement structure has been issued." No similar note appears on the 2007 demolition permit application, however. That later application form includes a signature indicating approval, dated April 10, 2007. Immediately following that application form in the administrative record is a document entitled "building permit," with the same permit issue date as the approved application, April 10, 2007. Despite its title, however, the "description of work" in this document is given as "demolish single family residence." In short, there is no evidence in the administrative record that a building permit actually preceded, followed, or accompanied the demolition permit, or that such a requirement existed as of 2007.

In any event, even assuming that construction inexorably follows demolition, the nature of the building permit approval must be considered. As stated in the *Court House Plaza* case, "Palo Alto has adopted section 302 of the Uniform Building Code, which provides that a building permit will be issued if the development plans submitted with the application comply with existing laws." (*Court House Plaza Co. v. City of Palo Alto, supra*, 117 Cal.App.3d at p. 883; see PAMC, § 16.04.020.) "The issuance of the permit is not left to the discretion of the building inspector; it is only when the plans are not up to code that the permit may be denied." (*Court House Plaza Co. v. City of Palo Alto*, at p. 883.) This case thus falls within the usual rule that "issuance of a building permit for a project meeting the criteria of the applicable zoning ordinance and Uniform Building Code is a ministerial project to which CEQA does not apply." (*Prentiss v. City of South Pasadena, supra*, 15 Cal.App.4th at p. 89; see Guidelines, § 15369.)

■ Here, then, we have a ministerial demolition permit, arguably followed by a ministerial building permit. That combination does not render the approval a discretionary one. As long-standing California Supreme Court authority teaches, "an EIR must include analysis of the environmental effects of future expansion or other action if: (1) it is a reasonably foreseeable consequence of the initial project; and (2) the future expansion or action will be significant in that it will likely change the scope or nature of the initial project or its environmental effects. Absent these two circumstances, the future expansion need not be considered in the EIR for the proposed project." (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 396 [253 Cal.Rptr. 426, 764 P.2d 278].) The "whole of the action" theory thus rests on those two requirements. Here, there is no basis for finding that the second requirement has been satisfied. Given the nature of the assumed future action here—a ministerial building permit, statutorily exempt from CEQA—it cannot be deemed environmentally significant. (Cf. *Orinda Assn. v. Board of Supervisors, supra*, 182 Cal.App.3d at p. 1153 [segmentation improper where project was "governed by three levels of applicable local land-use regulations" including complex and detailed "procedures for review of development proposals and the standards for granting of variances"].) Under these circumstances, there is no basis for requiring CEQA review under the "whole of the action" theory.

4. *The possibility of eminent domain does not change the result.*

Respondent suggests that discretion resides in the ordinance because its delay provisions offer "time to consider alternatives, including providing incentives to the owner or even acquisition by eminent domain."

In reply, appellants counter that respondent's reasoning—taken to its logical conclusion—would swallow "CEQA's exception for ministerial

projects whole. This is not the law." As noted in *Friends of Gill*, the power "to grant a permit . . . necessarily includes the power not to grant. Such an act, however, could entail serious economic consequences and might be construed as an act of inverse condemnation." (*Friends of Gill, supra*, 121 Cal.App.3d at p. 214.)

We need not address the eminent domain question, because it is forfeited. Respondent's failure "to make a coherent argument" in support of its suggestion "constitutes a waiver of the issue on appeal." (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [27 Cal.Rptr.3d 583].)

### 5. *There was no actionable procedural violation.*

Respondent asserts that the City violated procedural requirements of both state and local law. As we now explain, we discern no CEQA violation, and we conclude that the claimed violations of PAMC do not justify further administrative proceedings.

### a. *CEQA*

Respondent argues that the City violated CEQA in two ways: (1) by failing to prepare an environmental report, and (2) by failing to provide an administrative appeal of the exemption determination to the city council.

The first argument cannot be sustained in the face of our determination that approval of the demolition permit is ministerial and thus exempt from CEQA. "If the agency finds the project is exempt from CEQA under any of the stated exemptions, no further environmental review is necessary." (*Davidon Homes v. City of San Jose* (1997) 54 Cal.App.4th 106, 113 [62 Cal.Rptr.2d 612].)

In support of its second argument, respondent cites section 21151, which provides for appeal to the lead agency's elected body when a "nonelected decisionmaking body" has made an exemption determination. (§ 21151, subd. (c); see *Vedanta Society of So. California v. California Quartet, Ltd.* (2000) 84 Cal.App.4th 517, 526–527 [100 Cal.Rptr.2d 889].) That requirement has no application in this case. Here, the exemption determination was made by the agency's elected body—the city council itself—when it approved the stipulated postappeal modified judgment, which includes a finding that issuance of the demolition permit is ministerial and thus exempt from CEQA.

b. *PAMC*

Turning to local law, respondent asserts that the "demolition permit was never subjected to required City processes" prescribed by the ordinance, which include referral to the historic resources board and a moratorium. Based on that assertion, respondent contends: "The City has violated mandatory provisions of its Municipal Code."

Assuming lack of compliance with the referral and delay provisions of PAMC section 16.49.070, we see no basis for returning the matter to the City for further administrative proceedings as to either requirement.

First, requiring compliance with the ordinance's referral provision would be an idle act at this juncture. (Cf. *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1227 [111 Cal.Rptr.2d 420] [requiring the trial court to address appellant's declaratory relief action "would be an idle act that the law does not require," where "such a declaration could not be 'enforced' without a quo warranto action"]; *Thorman v. Intl. Alliance etc. Employees* (1958) 49 Cal.2d 629, 635 [320 P.2d 494] [requiring plaintiff to exhaust administrative remedies would have been an idle act], overruled on another point by *Consolidated Theatres, Inc. v. Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, 721, fn. 8 [73 Cal.Rptr. 213, 447 P.2d 325]; *Van Gammeren v. City of Fresno* (1942) 51 Cal.App.2d 235, 240 [124 P.2d 621] [acknowledging that "applications for permits, and appeals from adverse decisions, would have been useless acts"].) Given our determination that issuance of the demolition permit is ministerial, the historic resources board has no power to affect the decision approving the permit; referring the permit application to it thus can serve no good purpose. "The law neither does nor requires idle acts." (Civ. Code, § 3532.)

Second, the postappeal modified judgment operates as the functional equivalent of the delay provisions in PAMC section 16.49.070. Like the 60-day moratorium required by subdivision (a) of section 16.49.070, the judgment provides for a delay in "commencement of final demolition" for a period of 60 days following issuance of the demolition permit. Given the ministerial nature of the approval, it is immaterial that the 60-day delay period required by the judgment follows rather than precedes permit issuance. As for the one-year moratorium extension permitted by subdivision (c) of section 16.49.070, the discretion to impose that extension rests with the city council. Here, by approving the judgment's finding that the maximum moratorium period long ago expired, the city council effectively determined that no further delay was warranted. Under these circumstances, to require imposition of the ordinance's delay provisions would exalt form over substance.

## SUMMARY OF CONCLUSIONS

CEQA does not apply to the demolition permit at issue here, because approval of that permit was a ministerial act. Under the plain language of the governing municipal code provision, the City had no authority to impose permit conditions that would render it discretionary. That conclusion is not altered by the possibility that a building permit will subsequently issue. Finally, there was no actionable procedural violation, either of CEQA or of the governing municipal code provision.

## DISPOSITION

The judgment is reversed, and the cause is remanded to the trial court with instructions to enter a new and different judgment denying the petition for writ of mandamus. Appellants shall have costs on appeal.

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.

A petition for a rehearing was denied November 22, 2010, and the petition of respondent Friends of the Juana Briones House for review by the Supreme Court was denied February 23, 2011, S189466.