Filed 10/16/23  Mission Peak Conservancy v. County of Alameda CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MISSION PEAK CONSERVANCY et al.,<br><br>        Plaintiffs and Appellants,<br>v.<br><br>COUNTY OF ALAMEDA,<br><br>        Defendant and Respondent;<br><br>CHRISTOPHER GEORGE et al.,<br><br>        Real Parties in Interest and Respondents. | A165954<br><br>(Alameda County Super. Ct. No. RG18905553) |

Petitioners Mission Peak Conservancy and Kelly Abreau appeal a judgment denying their petition for writ of mandate, which sought (1) to compel respondent County of Alameda (the County) to set aside building permits issued to real parties in interest Christopher and Teresa George (the Georges) for improvements on their property and to comply with the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq. (CEQA))[1] and (2) to compel the County to enforce its zoning laws against the Georges' property.  With respect to petitioners' CEQA claim, we conclude that

---

[1] All further statutory references are to the Public Resources Code unless otherwise indicated.

substantial evidence supports the County's determination that its issuance of ministerial building permits was exempt from CEQA review.  With respect to petitioners' zoning enforcement claim, we reject their argument that the County has abused its discretion by not commencing enforcement proceedings against the Georges' property.  Accordingly, we will affirm the judgment denying the petition for writ of mandate.

## BACKGROUND

The Georges own an approximately 700-acre agricultural-zoned ranch on Morrison Canyon Road in rural Alameda County.  In July 2014, the Georges applied to the County for building permits to replace an existing barn with a two-story, 12,000-square-foot barn, stating the new barn would be used "for storage, canning and a someday soon the making of olive oil or wine from the trees and grapes we are presently planting."  At that time, the County suggested the project may be subject to CEQA review due to possible impacts from proposed "paving and subsequent outfalls into wetlands."  In December, however, after reviewing a report by the Georges' CEQA consultant, the County agreed that the project was exempt from CEQA review.  Between February and November 2015, the County issued the building permits necessary for construction of the new barn.  Construction commenced shortly thereafter.

In August 2016, petitioners complained repeatedly to the County about the Georges' "2,000 square foot 'ag' building."  Petitioners speculated that the Georges intended to use the barn as a brewery or event center and asked, "Could you ascertain the purpose/usage of this 'ag building'?  Has the County permitted that usage?"  In response, the County advised petitioners that the planning department would be involved if the owner wanted to petition for a

special permit to operate a brewery with events, but that any future use of the building was speculative at that time.

In June 2017, petitioners emailed the County again regarding the Georges' barn. The email notes that "[t]he building which is designed as a brewery or events center has construction permits, but they describe it as an 'agricultural barn.'" Petitioners requested that "the Planning Department and/or Code Enforcement officials inspect the structures, recreational lake, dam, and grading/excavations. Officials should review the zoning, ensure they comply with CEQA reporting, and issue the needed permits." Throughout the summer and fall of 2017, petitioners repeatedly asked the County to require that the Georges comply with CEQA and obtain any permits and zoning adjustments necessary for any use of the barn for non-agricultural purposes. For example, on October 14, 2017, petitioner Abreau stated in an email to the County: "Copper sheathing was installed recently on the roof of the 'agricultural barn.' The 'barn' exudes an aura of luxury, from the shiny reflection of the copper that saturates the camera sensor. The copper sheathing promises that the cows, bison, agricultural supplies and/or hay stored inside the 'barn' will be protected from the elements. However, an official with the County Supervisor's Office has stated that it is not a 'barn.'" A November 13, 2017 email written by petitioners explains further: "By any normal and customary definition, this is not an 'agricultural barn.' It is luxurious, with in-floor radiant heating on the second floor. The roof has costly, ostentatious copper sheathing. It has an attached 2,000 sq ft patio, with cedar awnings, which overlooks the recreational lake or pond, the artificial beach and the beach-side gazebo. It has an upgraded 400-Amp electrical supply, and an upgraded septic system. The maintenance of farm animals do not require expanded septic systems for normal operations." The

3

email adds, "The CEQA issue is not ministerial versus discretionary. Either way, CEQA reporting is required. According to an email from a County Planner on July 14, 2014 at 11:12 a.m., 'It's part of a much bigger project, that does require CEQA and rezoning.' "

During that same time period, the County conducted a code enforcement investigation at the Georges' property and determined that the Georges had constructed several improvements without permits. Petitioners were apprised of the County's ongoing investigation. Thereafter, the County worked with the Georges to obtain the necessary permits to resolve the code enforcement matter.

During the course of the investigation, the Georges informed the County that the second story of the building would be used to host non-commercial social events. Concerned that the original building plans, which complied with building code requirements for utility (U) and storage (S2), were insufficient for this new use, the County required the Georges to submit modified building plans that complied with the building code requirements for assembly (A2) use. Around this time, the County also sought to have the Georges sign a deed restriction that would limit the use of the property to prohibit, without prior authorization, "public activities, such as but not limited to organized events, with or without remuneration." The Georges did not, however, sign the proposed document.

On November 14, 2017, petitioners were informed, "From its inception, the project has been proposed to be a non-commercial venue, it is being proposed for personal use and storage and the building permit that was obtained reflects this use. Based on recent complaints we have visited the site 2 times in the last month or so to look at the ongoing construction of the barn facility as well as discuss the overall use of the property and any other

4

permits that may need to have been secured by the property owner. [¶] The use of the main barn, as mentioned above, is not being proposed for anything other than storage and personal use, there is no proposal to open a brewery, winery or any other commercial activity at the site. Although the construction is of a quality not usually associated with a barn, this is a matter of personal taste and that is not something we regulate." In response to petitioners' concerns about "whether or not the owner can have other uses on [this] property that are not related to agriculture," the email advises that the "rules adopted by the county do allow other uses that are compatible with Agriculture." Finally, the email adds, "[N]o discretionary permits have been required so far based on the proposed use, and if through the code enforcement process this remains true, then the CEQA process will not be necessary."

On November 17, 2017, the County approved revised building plans for the new barn based on the Georges' intended use of the building for private social events, with a total occupancy limit of 406 people (385 on the upper level and 21 on the lower level). The project description on the approved plans states, "The second floor of the building is for the personal, non-commercial use of the owner for the owner's personal private events."

On November 21, 2017, the County issued a permit to extend a retaining wall and to build a courtyard, gas fireplace and waterfall (the courtyard permit). The permit indicates that no commercial use of the barn is permitted. Thereafter, the County issued five additional building permits.[2]

_____

[2] The county issued permits for installation of a gas line to the courtyard, a water line from a well to the barn, an extension of the gas line, an inground spa and a gazebo. Several of these permits were required as part of the County's investigation discussed above. Petitioners also claim an

5

On May 18, 2018, petitioners filed a petition for writ of mandate alleging that the County failed to comply with CEQA by approving building permits on and after November 21, 2017, without conducting any discretionary CEQA review of the Georges' actual and intended use of the property for "assembly use." The petition was subsequently amended to allege a cause of action seeking to compel the County to enforce zoning laws that, according to petitioners, prohibit the Georges from using their property, including the barn, for assembly use without a conditional use permit, variance, or zoning adjustment.

In June 2022, the trial court issued judgment in favor of the County on all claims. Petitioners timely filed a notice of appeal.

While the appeal was pending, the County adopted Ordinance No. 2023–15, which modifies the zoning ordinance to define an "agricultural building" as "[a] structure designed and constructed or used to house farm implements or farm equipment; poultry, livestock, or similar farm or ranch animals; or hay, grain, olives, nuts, hops, wine, or other horticultural products in bins, tanks, barrels, case goods, or other storage vessels." The new legislation adds that the structure "shall not be a place of human habitation, nor shall it be a place used by the public or for social events." Petitioners request this court take judicial notice of the new legislation and argued in their reply brief that this court should apply this new law on appeal. The County and the Georges oppose the request for judicial notice

_____

application for a grading permit, submitted in November 2020, and the construction of a new road between 2019 and 2020 are part of the modified project.

6

and argue that the new legislation is irrelevant to the issues on appeal.[3]  We grant petitioners' request for judicial notice and discuss below the limited, if any, relevance of the new legislation.[4]

## DISCUSSION

### 1.  *The CEQA Claim*

"CEQA was enacted to advance four related purposes: to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, environmental damage; (3) prevent environmental damage by requiring project changes via alternatives or mitigation measures when feasible; and (4) disclose to the public the rationale for governmental approval of a project that may significantly impact the environment."  (*California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382.)

As a threshold matter, we reject the Georges' argument that petitioners lack standing to challenge the County's compliance with CEQA.  Petitioner Mission Peak Conservancy is "a neighborhood political advocacy organization dedicated to the preservation of the environment, protection and enhancement of park access, and the construction of a network of bicycle and pedestrian trails in southern Alameda County near Fremont, California, including the area in which [the Georges' property is] located in Vargas Plateau."  Petitioner Abreau is resident of Fremont, California.  Petitioners'

---

[3] The County and the Georges also moved to strike petitioners' reply brief on the ground that they impermissibly raised this and other new issues. We denied the motion to strike but permitted the County and the Georges to submit supplemental briefing responsive to the new issues raised in the petitioners' reply.

[4] The requests for judicial notice of several other provisions of the Alameda County Municipal Code and the California Building Code, filed by the County and the Georges, are also granted.

geographic proximity to the project is sufficient to support standing. (See *Burrtec Waste Industries, Inc. v. City of Colton* (2002) 97 Cal.App.4th 1133, 1137 [" '[I]n a writ of mandate against a municipal entity based on alleged violations of CEQA, a property owner, taxpayer, or elector who establishes a geographical nexus with the site of the challenged project has standing. [Citations.] Moreover, the geographical nexus can be attenuated . . . because "[e]ffects of environmental abuse are not contained by political lines" ' "].)

To determine whether CEQA applies to a proposed activity, a public agency must "determine whether the activity is a 'project' for purposes of CEQA and, if it is, whether it falls under an exemption." (*Sierra Club v. County of Sonoma* (2017) 11 Cal.App.5th 11, 19; *Communities for a Better Environment v. Bay Area Air Quality Management Dist.* (2016) 1 Cal.App.5th 715, 721.) CEQA defines a "project" as "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment" and, as relevant here, which "involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (§ 21065.) A "project" includes "the whole of an action" (Guidelines § 15378, subd. (a))[5] and "refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies." (*Id.* at § 15378, subd. (c).) It "does not mean each separate governmental approval." (*Ibid.*)

Petitioners define the "project" at issue as including the Georges' "assembly use" of the barn, as well as "the permits for which the Georges applied and those the County approved for the physical construction of

---

[5] We will cite and refer to CEQA's implementing regulations codified at title 14, division 6, chapter 3 of the California Code of Regulations, as the "Guidelines."

8

certain improvements made to the property after November 21, 2017." They contend that the County "violated CEQA by narrowly defining the project as the building permits only, even though it knew it would be used for assembly use." Assuming, without deciding, that petitioner's project definition is correct, the trial court properly denied the petition on the ground that substantial evidence supports the County's determination that the courtyard permit and other building permits issued after November 21, 2017, were ministerial and thus, exempt from CEQA.[6]

" 'Ordinarily issuance of a building permit for a project meeting the criteria of the applicable zoning ordinance and Uniform Building Code is a ministerial project to which CEQA does not apply.' " (*Friends of Juana Briones House v. City of Palo Alto* (2010) 190 Cal.App.4th 286, 302; § 21080, subds. (a) and (b)(1) [CEQA applies only to "discretionary projects proposed to be carried out or approved by public agencies" and exempts "[m]inisterial projects" from review]; Guidelines § 15268, subds. (a) & (b) [The "[i]ssuance of building permits" are "presumed to be ministerial"].) The issuance of a building permit is considered discretionary only where the agency has " 'the power to deny or condition th[e] building permit or otherwise modify this project in ways which would have mitigated environmental problems an EIR might conceivably have identified.' " (*Sierra Club v. County of Sonoma,*

---

[6] Although listed in the statement of facts, petitioners' opening brief did not individually address any permits issued within the limitations period other than the courtyard permit. Accordingly, any argument that these permits were not ministerial has been waived. Petitioners' argument in their reply brief that the modified project includes a new road and spillway "even without formal agency approval" exceeds the scope of any argument made in their opening brief. In any event, petitioners again fail to make any specific argument as to those improvements, but rather lump them in as part of the project to use the barn as an event center.

*supra*, 11 Cal.App.5th 11, 20; see also *Friends of the Juana Briones House v. City of Palo Alto, supra*, 190 Cal.App.4th at p. 308, [permit is discretionary if agency "has [the] authority to condition the permit in environmentally significant ways"].)

"We . . . review an agency's determination that an activity falls under the ministerial exemption for ' "a prejudicial abuse of discretion." ' [Citations.] 'Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence.' " (*Sierra Club v. County of Sonoma, supra*, 11 Cal.App.5th at p. 23.)

Petitioners argue that the County's approval of the courtyard permit as ministerial was an abuse of discretion because it was based on a factually unsupported finding that the barn, to which the courtyard would be attached, was for agricultural use. They suggest that the County knew the barn would be used for assembly rather than agricultural use when it approved the courtyard permit and that "the County could have refused the courtyard permit since assembly use of the banquet hall of which it is a part is not a right or an allowed accessory use in an agricultural zone." We disagree.

Substantial evidence supports the County's determination that the barn was for agricultural use and that the use of the barn for private social events was consistent with the property's existing zoning designation. While the intended use of the second floor of the barn expanded to include hosting private parties, the Georges repeatedly asserted that the lower level, although they did not consider it a "traditional barn," would be used for agricultural purposes: production of wine or beer for personal use and/or storing antique farm equipment. When the courtyard permit was issued, a variety of uses were allowed in agricultural zones, such as horticulture,

wineries, homes, and barns. As the County explains, "the fact that assembly is not expressly listed as a permitted use in the Agricultural (or other) zone districts does not mean that social gatherings are banned County-wide. Rather, periodic private gatherings can be 'accessory' to principal uses. For example, agricultural zoning permits all uses 'normally accessory to a dwelling' in addition to expressly permitted uses (e.g., homes, barns, maintenance buildings). . . . Accessory uses are not limited to those specifically listed, but may include 'the broad sphere of home activities as they existed at common law,' such as 'the use of a home as a social institution, for the private religious, educational, cultural and recreational advantages of the family.' " The county reasonably concluded that, under existing zoning laws, accessory use of the Georges' barn for personal social events was permissible.[7]

Petitioners' reliance on the proposed deed restriction to establish the County's alleged knowledge that the barn was not "legal land-use wise" is misplaced. The proposed document did not, as petitioners suggest, prohibit "all assembly use, commercial or personal." It prohibited "*public* activities . . . with or without remuneration" (italics added) and limited use of the property to those uses permitted or accessory to permitted uses in agriculturally zoned districts. Petitioners' argument that "commercial v.

---

[7] Petitioners' argument that the County's new legislation defining the permissible uses of an agricultural building should be applied retroactively is without merit. As the County explains, "The new definition in the zoning ordinance has no bearing on the County's past CEQA compliance. . . . [T]he new definition is 'future looking' and prospective and is applicable only 'in the future, not to past approvals.' " The Georges agree that "[a]ny unauthorized 'assembly use' of the barn as an 'agricultural building' under the new County Ordinance, should that ever become an issue, is a future Code Enforcement matter, not a CEQA issue."

private use is immaterial" for the purpose of assessing environmental harm under CEQA likewise misses the point. While commercial use of the property would require issuance of a discretionary use permit or zoning variance, private use of the property for parties and/or weddings was, as the County determined, authorized under the zoning ordinance at the time the permits were issued. Contrary to petitioners' suggestion, the language included on the courtyard permit that the barn was "For Private use Only—No Commercial Use" did not add a discretionary condition to the permit. It merely reflects the County's prior determination that personal accessory use of the barn, but not commercial use, was permitted under its zoning laws. The courtyard permit itself was ministerial and issued without any restrictions or conditions.

We also reject petitioners' argument that the County engaged in improper "piecemealing" at the time the courtyard permit was issued by deferring "CEQA review of assembly use." (See, e.g., *Banker's Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego* (2006) 139 Cal.App.4th 249, 281 [" '[a] public agency is not permitted to subdivide a single project into smaller individual subprojects in order to avoid the responsibility of considering the environmental impact of the project *as a whole*' "]; *Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 280 ["piecemealing" refers to artificially dividing a project into components for the purpose of evading CEQA review].) When, in the course of its investigation, it became clear to the County that the Georges intended to use the barn for private parties, the County determined that the use of the barn for private social events was consistent with applicable zoning and that no change in zoning or conditional use permit was required. Accordingly, the County's approval of the courtyard and other permits was ministerial and

12

was not dependent upon the approval of any unauthorized use of the property. The County's deferred consideration of any commercial use of the project until such permit application is presented by the Georges does not constitute improper piecemealing. As set forth above, the Georges have consistently and repeatedly denied any intention to use the barn for commercial events. The argument that commercial use of the barn is "reasonably foreseeable" is therefore entirely speculative. (See *Banning Ranch Conservancy v. City of Newport Beach* (2012) 211 Cal.App.4th 1209, 1224–1225 [noting cases "rejecting piecemealing claims on the ground the future actions were too speculative"]; *Berkeley Keep Jets Over the Bay Com. v. Board of Port Cmrs.* (2001) 91 Cal.App.4th 1344, 1362 [omission of future plan from project description was permissible where "the stated long-range goal of expanded runway capacity is entirely speculative"].)

Accordingly, the trial court correctly entered judgment in favor of the County on petitioners' CEQA claim. In light of this conclusion, we do not reach respondents' additional argument that any challenge to the barn and other related improvements is moot.

## 2. The Zoning Enforcement Claim

### a. Factual Background

After the certificate of occupancy was issued in August 2018, the Georges held the following events at the barn: a wedding in August 2018 with 100 to125 guests in attendance; a wedding in August 2019 with 100 to 125 guests in attendance; a birthday celebration in June 2019 with 25 to 30 guests in attendance; a financial meeting in November 2019 with 30 to 40 guests in attendance; and a financial meeting on January 8–9, 2020 with 30 to 40 guests in attendance.

13

In July 2020, petitioners complained to the County about the August 2019 wedding and the January 2020 business event.  The complaint was forwarded to the County Planning Director.

In October 2020, the Georges hosted another wedding at the barn with 25 guests in attendance.

In March 2021, petitioners complained to the County about a wedding event being planned for December 2021.  The County sent a warning letter to the Georges reminding them they cannot use the barn for "commercial uses and use of the site as an event venue."  The Georges assured the County that the wedding was for family friends and not for commercial purposes.  The wedding took place in December 2021.[8]

## b. Legal Background

Under Code of Civil Procedure section 1085, subdivision (a), "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station."  A writ of mandate " 'will issue against a county, city, or other public body.' " (*Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1558.)

" 'Generally, mandamus is available to compel a public agency's performance or to correct an agency's abuse of discretion when the action being compelled or corrected is ministerial.  [Citation.]  "A ministerial act is

---

[8] The County argues that insofar as petitioners' claim rests on a failure to enforce its zoning laws in response to events held after the filing of the amended petition in October 2019, their claim fails because a "petitioner's right and the respondent's duty are measured as of the time the proceeding is filed." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 731–732.)  Petitioners do not directly address this argument, but appear to disagree.  In light of our discussion below, we need not resolve this dispute.

an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. Discretion . . . is the power conferred on public functionaries to act officially according to the dictates of their own judgment. [Citation.]" [Citations.] Mandamus does not lie to compel a public agency to exercise discretionary powers in a particular manner, only to compel it to exercise its discretion in some manner.' " (*Center for Biological Diversity v. Department of Conservation* (2018) 26 Cal.App.5th 161, 171.)

### c. Analysis

Petitioners seek a writ of mandate compelling the County to enforce its zoning laws against the George property. Petitioners argue that the County's mandatory duty to enforce its zoning laws arises from the following provisions in the Alameda County Municipal Code ("Municipal Code"): (1) section 17.58.010, which provides that "every employee of the county authorized to issue permits . . . affecting the use or occupancy . . . shall comply with the provisions of this title," (2) section 17.58.020, which reads, "It is the duty of the planning commission to ensure the proper administration of this title," and (3) section 17.58.040, which provides, "It is the duty of the planning director and of all other officials . . . to enforce [the zoning ordinance]." Petitioners acknowledge that the court cannot compel the County to take any specific action to enforce its zoning laws, but argue that the County can and should be compelled, in the face of the Georges' allegedly clear violation of the zoning code, to exercise its " 'discretionary powers in some way.' " (See *Sunset Drive Corp. v. City of Redlands* (1993) 73 Cal.App.4th 215, 222 [if a public entity refuses to act, "mandate is available to compel the exercise of those discretionary powers in some way"];

15

*Morris v. Harper* (2001) 94 Cal.App.4th 52, 62–63 ["A refusal to exercise discretion is itself an abuse of discretion"].)

Petitioners explain, "In this case, the County took no discretionary action regarding the Georges' continuous unlawful use of the venue for assembly use. The County responded to just one of Petitioners' many complaints, regarding the December 2021 wedding, simply issuing a warning. [ ¶ ] But warnings are not action. . . . Indeed, the warning letter in 2021, warned of 'the potential for enforcement action,' indicating the letter itself is not a discretionary act enforcing the zoning code, but just a warning such enforcement may be forthcoming."

The County responds that it cannot be compelled to act when the decision to commence enforcement proceedings is itself discretionary. We agree.

In *Riggs v. City of Oxnard* (1984) 154 Cal.App.3d 526, 528–530, the court held that because the City of Oxnard had the discretion to resolve a zoning violation in a number of ways, the city could not be compelled to commence enforcement proceedings against the offending property. The court explained that the use of the term "may" in the relevant zoning ordinance indicated that prosecutorial enforcement was discretionary rather than mandatory: "Ordinance No. 1506 of the City of Oxnard states that a violation of a license or permit condition granted pursuant to chapter 34 (zoning) 'may be prosecuted as a violation of the Code of the City of Oxnard pursuant to Section 1-10.' The language of the statute is clear in that it does not require prosecution for a violation, but uses the word 'may,' thereby allowing the city discretion to make such a determination. The respondent city is not, therefore, mandated to issue a criminal citation for a zoning violation, but may logically resolve a violation in other ways, as it did in this

16

case." (*Ibid*.)  Similarly, in this case, the Municipal Code provides that the County *may* take various enforcement actions for violations of the zoning ordinance, but does not impose a mandatory duty upon it to do so.  (See Municipal Code § 17.58.050 ["Any building or structure set up, erected, constructed, altered, enlarged, converted, moved or maintained contrary to this title is unlawful and is hereby declared to be a public nuisance and *may* be abated by the enforcement officer as set forth herein" (italics added)]; Municipal Code § 17.58.060, subd. (B) [Any condition caused or permitted to exist in violation of any of the provisions of this title shall be deemed a public nuisance and *may* be summarily abated as such by the county" (italics added)].)

The County also argues that even if it had a duty to act in some way other than issuing a warning, petitioners have not established that the Georges' use of the barn clearly violated the zoning ordinance.  As set forth above, the County reasonably concluded that use of the property for occasional private social events was permitted under the zoning designation of the property.  The County correctly asserts that it "has broad discretion in interpreting and applying its own zoning code and determining at what point occasional parties and weddings are 'normally accessory' and at what point such uses cross the line."  Petitioners concede that under the prior zoning ordinance, "[r]ecreational assembly use of a barn is a qualified accessory use in an agricultural zone . . . but *only if* the venue is a barn."  As set forth above, although the Georges did not consider it a "traditional barn," they repeatedly indicated the ground floor would be used for some agricultural purpose.

The County's explanation for its decision is reasonable.  The County investigated and concluded that the Georges' use of the barn for private social

17

gatherings did not violate its zoning laws. The County warned the Georges that commercial use would be a violation and received assurances that the December 2021 wedding was not a commercial event. The County has provided a reasonable explanation for its decision not to proceed on petitioners' complaint. Accordingly, contrary to petitioners' argument, the County did not abuse its discretion by not commencing enforcement proceedings. (See *Helena F. v. West Contra Costa Unified School Dist.* (1996) 49 Cal.App.4th 1793, 1799 ["In determining whether an agency has abused its discretion, the court may not substitute its judgment for that of the agency, and if reasonable minds may disagree as to the wisdom of the agency's action, its determination must be upheld"].)

As set forth above, while the appeal was pending, the County adopted legislation prohibiting the use of agricultural structures for "social events." Petitioners argue under the new definition, "it is not a matter of discretion to determine whether or not Real Parties violated the code. The new definition is clear when it states that an agricultural building shall not be for social events." The County disputes that the new ordinance eliminates its "discretion to decide whether or how to enforce its code" and that, in any event, "it is prospective only. It is thus wholly irrelevant to the zoning enforcement claims on appeal, which assert that the County violated an alleged duty to bring an enforcement action against the Georges for actions [petitioners] claim violated the County code." We agree that insofar as the new legislation applies only prospectively, it is not relevant to whether the County abused its discretion by failing to initiate enforcement proceedings based on activity that occurred prior to its enactment. We offer no opinion as

18

to how the new legislation impacts the County's enforcement of its zoning ordinance against the Georges' property in the future.

## DISPOSITION

The judgment is affirmed. The County and real parties in interest are entitled to their costs of appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
HIRAMOTO, J. [*]

---

[*] Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.